[No. 26171-5-II. Division Two. March 1, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. SHANNON BERRIER, *Appellant*.

640

*Shannon Berrier*, pro se.

*Rebecca Wold Bouchey*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *John C. Hillman, Deputy*, for respondent.

HOUGHTON, J. — Shannon Berrier was convicted of unlawful possession of a short-barreled shotgun (Count I), second degree unlawful possession of a firearm (Count II), and unlawful possession of a controlled substance (Count III). The trial court imposed firearm sentence enhancements on Counts I and III. Berrier appeals, challenging the enhancements. First, he argues that his weapon was not a firearm because it was unloaded. Second, he argues that it violated equal protection to enhance the sentence on Count I. Pro se, he raises the same arguments and further argues that there was insufficient evidence to support his conviction of unlawful possession of a firearm. We agree that it violates equal protection to enhance the sentence on Count I. Therefore, we vacate that sentence and remand for resentencing. Otherwise, we affirm.

## FACTS

During the afternoon of February 26, 2000, Tacoma Police Officers Nathan Clammer and Kristi Bucklin were patrolling the Hilltop area of Tacoma when they heard loud music. They tracked down its source: Berrier's car. The two officers approached the car to investigate.

As they approached, they noticed two bullet holes in the car. Officer Clammer signaled to his partner to be careful. Officer Clammer then made eye contact with Berrier, who was sitting on the driver's side of the front bucket seat. Berrier's hand quickly moved toward a jacket. Following this motion, Officer Clammer saw a shotgun on the seat next to Berrier. Officer Clammer tried to communicate with Berrier but, because of the music, Berrier did not hear the officer.

Because Berrier did not respond and because of the shotgun, Officer Clammer pulled out his service revolver, pointed it at Berrier, and ordered him to keep his hands in view and to leave the car. Officer Bucklin also drew her service revolver. Berrier, seeing the officers' guns, complied. The officers arrested him and searched the car.

In the car, they found the shotgun with its butt end removed. They found the butt end in the front seat and the sawed-off barrel in the backseat. Berrier had a hacksaw in his overall pocket. In addition to the shotgun and hacksaw, the officers recovered several knives and a pry bar from the car. Finally, they recovered an Altoids tin that contained a plastic bag with methamphetamine. At the police station, officers recovered a second bag of methamphetamine from Berrier's clothing. The police did not find any ammunition in the car.

The State charged Berrier with unlawful possession of a short-barreled shotgun (Count I),[1] unlawful possession of a firearm in the second degree (he had a prior domestic violence conviction) (Count II),[2] and unlawful possession of

---

[1] "It is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control, any machine gun, short-barreled shotgun, or short-barreled rifle; or any part designed and intended solely and exclusively for use in a machine gun, short-barreled shotgun, or short-barreled rifle, or in converting a weapon into a machine gun, short-barreled shotgun, or short-barreled rifle; or to assemble or repair any machine gun, short-barreled shotgun, or short-barreled rifle." RCW 9.41.190(1). " 'Short-barreled shotgun' means a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun by any means of modification if such modified weapon has an overall length of less than twenty-six inches." RCW 9.41.010(6).

[2] "A person . . . is guilty of the crime of unlawful possession of a firearm in the second degree, if the person . . . has in his or her possession, or has in his or her control any firearm:

"(i) After having previously been convicted in this state or elsewhere of . . . any of the following crimes when committed by one family or household member against another . . . : Assault in the fourth degree[.]" RCW 9.41.040(1)(b)(i).

a controlled substance (Count III).[3] Counts I and III were subject to firearm sentencing enhancements.[4]

At trial, the State established the above facts and showed that the shotgun, even without its butt end, was still operational. Berrier testified in his own defense and admitted possessing the shotgun and drugs, but explained that he did not know it was illegal to possess a short-barreled shotgun. He also explained that he possessed the gun because he had received threats, so he believed he needed a shotgun to protect himself. About a week before the arrest, he found this shotgun disassembled, with its barrel already sawed off. "It was just a luck of the draw, I guess. I needed a weapon. The area I was in I came across it." 1 Report of Proceedings at 150.

After he found the shotgun, someone fired at his car, trying to intimidate him. Rather than be intimidated, however, Berrier said he preferred being prepared. On the day of his arrest, he was turning the gun's butt end into a pistol grip so he could re-attach it and use the shotgun for protection. Berrier explained that this pistol grip would allow him to fire the shotgun while holding it at his waist. He testified he did not think it was necessary to aim with a sawed-off shotgun.

The jury convicted Berrier of all three charges and found that that he possessed a firearm for Counts I and III, thus subjecting him to a firearm enhancement sentence.

At sentencing, the prosecutor recommended the minimum sentence of 40 months, running the 18-month enhancements on Counts I and III consecutively. Berrier asked the court not to impose the enhancement on the unlawful possession of a short-barreled shotgun charge,

---

[3] "It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter." RCW 69.50.401(d).

[4] "The additional time for deadly weapon findings . . . shall be added to the entire standard sentence range." Former RCW 9.94A.370(1) (2000). This statute has been recodified at RCW 9.94A.530(1). The statutory language remains unchanged.

arguing that it was a legislative oversight that the crime was not exempt from the enhancement statute. The trial court agreed with Berrier that it was probably an oversight, but it imposed the enhancement because the law was clear and unambiguous. Berrier appeals.

## ANALYSIS

Berrier raises two challenges to the firearm sentencing enhancements that the trial court imposed. The first relates to both sentencing enhancements. The second relates only to the enhancement on the short-barreled shotgun conviction. First he contends that his unloaded and partially disassembled (but still functional) shotgun does not qualify as a firearm, as defined in RCW 9.41.010(1). Second, he contends that former RCW 9.94A.310(3) (2000)[5] violates equal protection because it punishes those who possess short-barreled shotguns more harshly than those who possess machine guns.

### Unloaded firearm

An unloaded or even inoperable firearm is still a firearm under RCW 9.41.010(1), and thus, a trial court may rely on possession of such a firearm to impose a firearm sentence enhancement under former RCW 9.94A.310(3) (2000). *See State v. Faust*, 93 Wn. App. 373, 380-81, 967 P.2d 1284 (1998); *State v. Sullivan*, 47 Wn. App. 81, 84, 733 P.2d 598 (1987). This is because the legislature has recognized that a firearm can create a deadly situation simply because its presence may cause the police or others to react, not knowing whether the firearm is unloaded or inoperable. *See State v. Faille*, 53 Wn. App. 111, 115, 766 P.2d 478 (1988). Or the defendant could use it to intimidate, frighten, or control persons not aware of the firearm's condition. *See Faille*, 53 Wn. App. at 115; *see also Faust*, 93 Wn. App. at 380-81; *Sullivan*, 47 Wn. App. at 84.

---

[5] This statute has been recodified at RCW 9.94A.510(3). The statutory language remains unchanged.

Here, Berrier possessed a functioning,[6] short-barreled shotgun, but no ammunition. The trial court did not err by enhancing Berrier's sentence, based on his possession of this firearm, simply because it was unloaded.

Berrier argues that in *Faust* and *Sullivan*, this court's holdings were limited to situations where ammunition was available. Although we mentioned that fact in both opinions, neither case turns on it. Both unambiguously hold simply that "an unloaded weapon is a deadly weapon." *Faust*, 93 Wn. App. at 380-81 (citing *Sullivan*, 47 Wn. App. 81) (other citations omitted).

Moreover, this case shows why courts should not require a shotgun to be loaded. Because of Berrier's loud music and the presence of the firearm, the officers were forced to draw their weapons. Had Berrier made a sudden movement after the officers saw the firearm, the situation could have turned deadly because of the firearm. Moreover, Berrier admittedly had the firearm to protect himself from someone's attempt to intimidate him. The firearm's presence, even if unloaded, could easily escalate a confrontation with the intimidator. Thus, this case is a good example of why the legislature intended to punish the possession of unloaded firearms in the same fashion as the possession of loaded firearms.

## Pro Se Issues

Berrier asserts pro se that he was not "armed" for purposes of imposing sentencing enhancements under former RCW 9.94A.310(3)(c) (2000)[7] because there was no ammunition. In *Faille*, the court held that a person in possession of an unloaded firearm is still "armed." *Faille*, 53

---

[6] That Berrier may have hurt himself, such as sustaining a hand or trigger finger injury shooting the shotgun, does not make it any less deadly and does not make it inoperable.

[7] This statute has been recodified at RCW 9.94A.510(3)(c). The statutory language remains unchanged.

Wn. App. at 114-15. Thus, Berrier's claim fails.[8]

Berrier further asserts that there was insufficient evidence to convict him of possession of a firearm (Count II).[9]

■■■ When we review challenges to the sufficiency of the evidence, we use the familiar tests found in *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v. Delmarter*, 94 Wn.2d 634, 637, 618 P.2d 99 (1980); and *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107, *review denied*, 141 Wn.2d 1023 (2000). These tests identify evidence as being sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. A defendant claiming insufficiency admits the truth of the State's evidence and all reasonable inferences drawn in favor of the State, with circumstantial evidence and direct evidence being equally reliable. In considering the evidence, "[c]redibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

■■■ The elements of this crime are (1) possession of (2) a firearm. Here, the officers described a firearm that they observed Berrier holding. What is more, Berrier admitted that he was modifying a weapon to enable him to shoot from his hip level. This is more than sufficient evidence to support his conviction.

## Equal Protection

The jury convicted Berrier of violating RCW 9.41.190. The trial court enhanced the sentence on this conviction

---

[8] Berrier's other pro se contention, that an unloaded and dismantled firearm is not a deadly weapon under RCW 9A.04.110(6), is identical to his attorney's contention and will not be addressed separately.

[9] Berrier incorrectly argues that the State must prove that he was in possession of a deadly weapon. Whether it was a deadly weapon is not an element of the crime charged, so this argument fails.

under former RCW 9.94A.310(3) (2000) because Berrier committed the crime of possessing a short-barreled shotgun while armed with a firearm—the short-barreled shotgun. The first statute makes the possession of a short-barreled shotgun illegal:

> It is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control, any machine gun, short-barreled shotgun, or short-barreled rifle; or any part designed and intended solely and exclusively for use in a machine gun, short-barreled shotgun, or short-barreled rifle, or in converting a weapon into a machine gun, short-barreled shotgun, or short-barreled rifle; or to assemble or repair any machine gun, short-barreled shotgun, or short-barreled rifle.

RCW 9.41.190(1). The second statute enhances a felony conviction if the defendant is armed with a firearm, unless the felony conviction falls within the following exclusions:

> The firearm enhancements in this section shall apply to all felony crimes except the following: Possession of a machine gun, possessing a stolen firearm, drive-by shooting, theft of a firearm, unlawful possession of a firearm in the first and second degree, and use of a machine gun in a felony.

Former RCW 9.94A.310(3)(f) (2000).

Berrier contends that applying a firearm sentence enhancement to his conviction of unlawful possession of a short-barreled shotgun violates equal protection because similarly situated persons possessing a machine gun, which is criminalized by the same statute, cannot have their sentences enhanced.

Under the Washington and federal constitutions, persons similarly situated with respect to the legitimate purposes of the law are guaranteed equal treatment. WASH. CONST. art. I, § 12; U.S. CONST. amend. XIV; *State v. Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997). Equal protection challenges are analyzed under one of three standards of review: strict scrutiny, intermediate scrutiny, or rational basis. *Manussier*, 129 Wn.2d at 672-73.

■ We review the legislative classification for a rational basis when the classification does not involve a suspect class or threaten a fundamental right. *Manussier*, 129 Wn.2d at 672-73. When a statute involves a physical liberty interest and does not involve a suspect class, no fundamental right is threatened. *Manussier*, 129 Wn.2d at 673. Here, former RCW 9.94A.310 (2000) involves only a physical liberty interest and does not involve a suspect class. Thus, we review it under the rational basis test.

■ Under the rational basis test, the challenged law must serve a legitimate state objective, the law must not be wholly irrelevant for achieving that objective, and the means must be rationally related to the objective. *Manussier*, 129 Wn.2d at 673. The legislature need not adopt the best means; rather, the legislature has broad discretion in how it pursues its legitimate goals. *Manussier*, 129 Wn.2d at 673. The person challenging the law must establish that the classification is purely arbitrary. *Manussier*, 129 Wn.2d at 673.

RCW 9.41.190(1) makes it illegal to possess machine guns, short-barreled shotguns, or short-barreled rifles. But former RCW 9.94A.310(3)(f) (2000) exempts only possessors of machine guns from sentencing enhancements. This results in two subclasses of offenders under RCW 9.41.190(1): those who are subject to a firearm enhancement because they possessed short-barreled rifles or shotguns and those who are not subject to an enhancement because they possessed a machine gun. Thus, the punishment differs for these two classifications. We must, therefore, determine whether the legislature had a rational basis for burdening one class of individuals more than another. *Haddenham v. State*, 87 Wn.2d 145, 150, 550 P.2d 9 (1976).

■ Former RCW 9.94A.310(3)(f) (2000) is part of a larger statute that was passed as part of the "Hard Time for Armed Crime" initiative in recognition that criminals carrying firearms are a more serious threat than other criminals. *See* LAWS OF 1995, ch. 129, § 1 (Initiative Measure No. 159). The purpose of the initiative was to punish armed

offenders more harshly to discourage the use of firearms. Nothing in this purpose is furthered by differentiating between short-barreled shotgun possessors and machine gun possessors.

 The purpose of exempting certain crimes from the firearm sentence enhancements in former RCW 9.94A.310(3)(f) (2000) appears to be that the possession or use of a firearm is a necessary element of the underlying crime itself. But, this purpose applies equally to the possession of a short-barreled shotgun as it does to possession of a machine gun: possession is a necessary element of the underlying crime in both cases. RCW 9.41.190(1).

The State argues that the legislature could have rationally chosen to punish possessors of short-barreled shotguns more harshly than possessors of machine guns because the legislature wished to discourage altering legal weapons, and to obtain a short-barreled shotgun, a person must alter a shotgun. This argument fails for two reasons.

First, the legislature recognized that a person may purchase a short-barreled shotgun without a modification. The definition of a short-barreled shotgun states that:

> "Short-barreled shotgun" means a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun by any means of modification if such modified weapon has an overall length of less than twenty-six inches.

RCW 9.41.010(6). Because a short-barreled shotgun need not be modified in order to be illegal, this definition belies the State's assertion that the legislature's purpose was to punish those who possessed altered weapons more harshly than those who possessed unaltered weapons.

Second, the legislature recognized that someone may purchase a gun and alter it so that it becomes a machine gun. The statute criminalizing the possession of short-barreled shotguns and machine guns provides that:

> It is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control,

any machine gun, short-barreled shotgun, or short-barreled rifle; or any part designed and intended solely and exclusively for use in a machine gun, short-barreled shotgun, or short-barreled rifle, **or in converting a weapon into a machine gun**, short-barreled shotgun, or short-barreled rifle; or to assemble or repair any machine gun, short-barreled shotgun, or short-barreled rifle.

RCW 9.41.190(1) (emphasis added). Thus, the State's reason for the legislative distinction fails.

Berrier meets his burden of proving the firearm enhancement statute violates equal protection under the rational basis test. The most plausible explanation for the distinction we can see is legislative oversight. Because the same statute makes it unlawful to possess a machine gun and short-barreled shotgun, the legislature meant to refer to the entire statute when it exempted unlawful possession of a machine gun from the enhancement statute. But legislative oversight does not excuse a violation of the equal protection clause. *See In re Pers. Restraint of Bratz*, 101 Wn. App. 662, 669-70, 5 P.3d 759 (2000).

We affirm the convictions. Because the enhancement is unconstitutional as applied, we vacate that portion of the sentence on the unlawful possession of a short-barreled shotgun conviction and remand for resentencing.

HUNT, A.C.J., and SEINFELD, J., concur.