201 P.3d 398 (2009)
STATE of Washington, Respondent,
v.
Brandon G. PEDRO, aka Brandon Pedro-Guerra, Appellant.
No. 60949-1-I.
Court of Appeals of Washington, Division 1.
February 23, 2009.
*401 Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Appellant.
Dennis McCurdy, King County Prosecutor's Office, Seattle, WA, for Respondent.
APPELWICK, J.
¶ 1 A jury convicted Brandon Pedro Guerra of one count of first degree assault, one count of second degree assault, and one count of unlawful possession of a firearm. Pursuant to RCW 9.94A.533(3), he received a firearm enhancement on the first degree assault conviction and a deadly weapon enhancement on the second degree assault conviction. Pedro-Guerra argues that the prosecutor was guilty of misconduct in questioning the victim. We conclude there was no misconduct. He appeals the firearm enhancement on the grounds that RCW 9.94A.533(3) violates equal protection, because it exempts some crimes involving use or possession of a gun from the enhancements but not first degree assault. Pro se, Pedro-Guerra argues that there was insufficient evidence to support his conviction of first degree assault. Finding that a rational basis supports the distinction between crimes that are exempt from enhancement and those subject to enhancement, we affirm.

FACTS
¶ 2 The State charged Brandon Pedro-Guerra with first degree assault, second degree assault, and unlawful possession of a firearm. The assault charges arose from two separate assaults of Zackary Terrell.
¶ 3 Pedro-Guerra and Terrell knew each other from "the streets." Terrell sold Pedro-Guerra an iPod for $20 in August 2006. Two days later at the Crestview Apartments, Pedro-Guerra told Terrell the iPod did not work. Later, the two were riding the same Metro bus, and Pedro-Guerra asked for his money back. An argument ensued. Terrell got off the bus, at which point Pedro-Guerra ran toward Terrell and attempted to hit him. Terrell grabbed Pedro-Guerra and the two fell into the bushes. Terrell got up and left. Pedro-Guerra told Terrell ". . . I'll be back."
¶ 4 A few moments later, Pedro-Guerra ran toward Terrell and hit him in the face with a softball-sized rock. Terrell fell to the ground. As he attempted to get up, Pedro-Guerra hit Terrell on the back of the head. Pedro-Guerra ran away. Terrell suffered fractures to his skull and medial orbital wall, as well as a laceration on the back of his head.
¶ 5 On August 29, 2006, Terrell boarded a Metro bus and saw Pedro-Guerra at the back. Terrell exited the bus at his stop. Pedro-Guerra exited immediately after Terrell, from a different door. Terrell testified that he turned around and saw Pedro-Guerra running toward him, so he ran. Pedro-Guerra asked Terrell, "where are you going, Cuz?" Terrell continued to run away from Pedro-Guerra toward his apartment complex. Terrell testified that Pedro-Guerra then fired four or five shots at him as he ran. Officer Peterson, who happened to be driving by as the shots were fired, testified that he saw a man in front of a bus lifting his arm, a muzzle flash coming from his hand, and that he appeared to be running while shooting. In an effort to follow the shooter, Officer Peterson turned around in traffic, but lost sight of him.
¶ 6 Amber Johnson, a passenger on the same Metro bus, exited behind Terrell. She heard someone running from behind her and moved out of the way. She identified the person as Pedro-Guerra. After moving past Johnson, Pedro-Guerra fired five shots at Terrell. Johnson testified that she was standing very close to Pedro-Guerra as he fired the shots.
¶ 7 The jury convicted Pedro-Guerra of first degree assault and unlawful possession of a firearm for the shooting incident, and second degree assault for the incident with the rock. The jury also returned special verdicts finding that Pedro-Guerra was *402 armed with a firearm for the first degree assault and armed with a deadly weapon for the second degree assault. With an offender score of six, Pedro-Guerra received a standard range sentence of 174 months, with a 60-month firearm enhancement on the first degree assault and a 12 month deadly weapon enhancement on the second degree assault conviction, to run consecutively.

DISCUSSION

I. Prosecutorial Misconduct

¶ 8 When a defendant claims prosecutorial misconduct, he bears the burden of establishing both the impropriety of the prosecuting attorney's comments and their prejudicial effect. State v. McKenzie, 157 Wash.2d 44, 52, 134 P.3d 221 (2006). To determine whether a prosecutor's comments constitute misconduct, a reviewing court first decides whether the comments were improper, and, if so, whether a substantial likelihood exists that the comments prejudiced the jury. State v. Dhaliwal, 150 Wash.2d 559, 578, 79 P.3d 432 (2003). An appellate court reviews alleged misconduct "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." Id.
¶ 9 Prior to trial, the parties agreed that no gang evidence would be elicited. The court ordered both attorneys to instruct their witnesses not to testify about gangs or gang membership. Pedro-Guerra claims that the following exchange with respect to the meaning of "cuz," during direct examination of Terrell, violated the court's pretrial order and was prejudicial:
Q What did you do when you looked back and saw him running?
A I started running.
Q Was he saying anything?
A I don't think so.
Q Okay. Did anyone say anything about Cuz?
A Yeah, he did.
Q What did he say?
A He said, where are you going, Cuz?
Q What does "Cuz" mean? I mean, did you sort of  what does it mean to you?
A It could mean a lot of stuff.
THE COURT: Can we have a sidebar, please? (A sidebar is had.) . . .
Q . . . Mr. Terrell, is going "Cuz" sort of like going, hey you?
A Yeah.
Pedro-Guerra asserts that the prosecutor committed misconduct by eliciting testimony from Terrell that Pedro-Guerra referred to him as "cuz," a term associated with the Crips. Pedro-Guerra insists that, in conjunction with the evidence already before the jury, that Pedro-Guerra was wearing dark blue clothing and a do-rag,[1] the reference to "cuz" prejudiced the jury against him. The State contends that defense counsel's failure to object waives appellate review. Alternatively, the State claims that no misconduct occurred, because Terrell never testified that "cuz" had gang connotations. To the contrary, he testified that it meant "hey you."
¶ 10 Pedro-Guerra failed to object below to the prosecutor's questions and raises prosecutorial misconduct for the first time on appeal. Failure to object to a prosecutor's improper remark constitutes waiver, unless the remark is deemed to be so flagrant and ill intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. Dhaliwal, 150 Wash.2d at 578, 79 P.3d 432. There is insufficient evidence to suggest that the prosecutor's remark was flagrant and ill intentioned. The prosecutor stated on the record that "[i]gnorantly I walked into an area we agreed to exclude; I asked the victim what it meant to him when the defendant used the word Cuz, apparently there's some potential gang connotation to that word. . . . And for what it's worth, I certainly did not intend to go into that area, it was just my ignorance. . . ." The issue is waived.
¶ 11 Pedro-Guerra contends that defense counsel's failure to object constitutes an exception to the objection requirement. Generally, to preserve an issue for appeal, a party must object to inadmissible evidence *403 when it is offered during trial, even when the trial court has already excluded it through a pretrial order. State v. Weber, 159 Wash.2d 252, 271, 149 P.3d 646 (2006) (citing State v. Sullivan, 69 Wash.App. 167, 172, 847 P.2d 953 (1993)). An exception to the objection requirement exists where "an unusual circumstance exists `that makes it impossible to avoid the prejudicial impact of evidence that had previously been ruled inadmissible.'" Weber, 159 Wash.2d at 272, 149 P.3d 646 (quoting Sullivan, 69 Wash.App. at 173, 847 P.2d 953). Examples of such unusual circumstances are when the other party's questions were "`in deliberate disregard of the trial court's ruling, or an objection by itself would be so damaging as to be immune from any admonition or curative instruction by the trial court.'" See, e.g., State v. Ra, 142 Wash.App. 868, ¶ 22, ¶ 23, 144 Wash.App. 688, 175 P.3d 609 (2008) (finding no waiver in a case where the prosecutor disregarded the trial court's ruling that gang evidence not be introduced by deliberately questioning a detective about his gang unit and why the case was assigned to him, and questioning the defendant about many aspects of his "group's" gang-like behavior)(internal quotation marks omitted) (quoting Weber, 159 Wash.2d at 272, 149 P.3d 646).
¶ 12 Here, the prosecutor's line of questioning was cut short by the court's request for a sidebar. After the sidebar, the prosecutor was allowed to ask Terrell a leading question about what "cuz" meant. In Ra, the defendant and the detective actually answered the questions creating a link to gang activity and causing clear prejudice. Terrell testified that "cuz" was like "hey you." Unlike Ra, nothing in the answer connected the word with a gang or gang activity.
¶ 13 We hold that the prosecutor did not commit misconduct and no prejudice occurred.

II. Equal Protection

¶ 14 Pedro-Guerra contends that RCW 9.94A.533(3) violates the state and federal guarantees of equal protection. The Washington Constitution article I, section 12, and the Fourteenth Amendment to the U.S. Constitution ensure that persons similarly situated as to the legitimate purposes of a law receive equal treatment. State v. Manussier, 129 Wash.2d 652, 672, 921 P.2d 473 (1996); State v. Coria, 120 Wash.2d 156, 169, 839 P.2d 890 (1992). Washington courts construe the federal and state equal protection clauses identically. Manussier, 129 Wash.2d at 672, 921 P.2d 473.
¶ 15 Strict scrutiny applies when the statutory classification at issue involves a suspect or semi-suspect class or threatens a fundamental right. See id. at 672-673, 921 P.2d 473. Because persons convicted of felony crimes under RCW 9.94A.533(3) are not a suspect or semi-suspect class, and because physical liberty is not a fundamental right recognized in equal protection doctrine, rational basis review applies. Id. at 673-74, 921 P.2d 473.
¶ 16 Under rational basis review, the challenged law must reflect a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective. Id. at 674, 921 P.2d 473. "The burden is on the party challenging the classification to show that it is `purely arbitrary.'" Coria, 120 Wash.2d at 172, 839 P.2d 890 (quoting Omega Nat'l Ins. Co. v. Marquardt, 115 Wash.2d 416, 431, 799 P.2d 235 (1990)). Rational basis requires only that the means employed by the statute be rationally related to a legitimate state goal; not that the means of the challenged statute be the best way of achieving that goal. Manussier, 129 Wash.2d at 673, 921 P.2d 473.
¶ 17 RCW 9.94A.533(3) provides that additional time must be added to a standard sentence for felony crimes if the offender was armed with a firearm and the offender is being sentenced for commission of a Class A, B, or C felony. RCW 9.94A.533(3)(f) exempts the following crimes from the sentencing enhancements: possession of a machine gun, possessing a stolen firearm, drive-by shooting, theft of a firearm, unlawful possession of a firearm in the first and second degree, and use of a machine gun in a felony.

A. Standing

¶ 18 The State contends that Pedro-Guerra lacks standing. A person may *404 not challenge the constitutionality of a statute unless he is harmfully affected by the particular statutory feature alleged to be unconstitutional. State v. Lundquist, 60 Wash.2d 397, 401, 374 P.2d 246 (1962); In re Powell, 117 Wash.2d 175, 197, 814 P.2d 635 (1991), grant of habeas corpus rev'd by Powell v. Ducharme, 998 F.2d 710 (9th Cir.1993). The State contends that Pedro-Guerra does not have standing to challenge the constitutionality of RCW 9.94A.533(3), because he is not similarly situated to persons subject to the statutory exemptions of RCW 9.94A.533(3)(f). The State's argument is misguided on two levels. First, it mistakenly believes that Pedro-Guerra is challenging just the portion of the statute that lists the exemptions. To the contrary, his challenge is to the entire statutory scheme of RCW 9.94A.533(3)  arguing that those who are exempt and those who are not, are similarly situated yet treated unequally. Second, whether Pedro-Guerra is similarly situated to persons subject to the statutory exemptions in a subsection of the statute he is challenging is inapposite to the standing analysis. Courts analyze whether a person is similarly situated to other persons subject to the statute once standing has been established.
¶ 19 The court imposed a firearm enhancement on Pedro-Guerra, adding five years to his sentence pursuant to RCW 9.94A.533(3)(a). Pedro-Guerra has standing because he is adversely affected by RCW 9.94A.533(3).

B. Rational Basis

¶ 20 To succeed with an equal protection challenge, a defendant must first establish that he is similarly situated with other persons in a class who have received different treatment under the same law. State v. Osman, 157 Wash.2d 474, ¶ 16, 139 P.3d 334 (2006); State v. Handley, 115 Wash.2d 275, 289-90, 796 P.2d 1266 (1990). Whether a defendant is similarly situated is an inquiry that is determined by and relative to the purpose of the challenged law. See Manussier, 129 Wash.2d at 673, 921 P.2d 473.
¶ 21 The purpose of RCW 9.94A.533, "part of the `Hard Time for Armed Crime' initiative," is to "punish armed offenders more harshly to discourage the use of firearms," except when the "possession or use of a firearm is a necessary element of the underlying crime itself." State v. Berrier, 110 Wash.App. 639, 649-50, 41 P.3d 1198 (2002).
¶ 22 In light of the purpose of the challenged law,[2] we must determine whether the class of persons committing first degree assault is similarly situated to the class of persons committing the exempt crimes.
¶ 23 Pedro-Guerra argues that he is similarly situated to those who are exempt from the enhancement, because possession or use of a weapon is an element of both first degree assault and the exempted crimes. The State argues that Pedro-Guerra is not similarly situated to persons exempt from the enhancement, because Pedro-Guerra's crime, first degree assault, is a serious violent offense under RCW 9.94A.030(45), whereas none of the exempted crimes is a serious violent offense. While this may be true,[3] there is a more compelling distinction between the class of persons subject to enhancements and the class of persons exempt from enhancements.
¶ 24 The clear distinction between the exempt and nonexempt crimes is as the Berrier court articulated: all of the exempt crimes involve use or possession of a firearm as the underlying crime.[4] 110 Wash.App. at 650, 41 *405 P.3d 1198. Persons committing the exempt crimes receive sentences specifically for use or possession of a firearm  the use or possession is a necessary element of the exempt crimes. Without the use or possession of a firearm, there would be no sentence.
¶ 25 In contrast, persons committing first degree assault receive a sentence for intentional infliction of great bodily harm, which can be committed various ways  use of a firearm or deadly weapon, exposure or transmission of HIV, or the infliction of great bodily harm without a weapon. RCW 9A.36.011. Use of a firearm is only one way assault is elevated to first degree. The sentence for first degree assault is the same regardless of whether the defendant uses a firearm. The enhancement under RCW 9.94A.533(3)(a) recognizes the additional threat that first degree assault with a firearm poses  consistent with the statute's purpose of punishing armed offenders more harshly.
¶ 26 We hold that Pedro-Guerra is not similarly situated to persons who commit crimes where possession or use of a firearm is a necessary element.[5] Equal protection does not guarantee equal treatment for those not similarly situated. See Osman, 157 Wash.2d at 484, ¶ 16, 139 P.3d 334; Handley, 115 Wash.2d at 289-90, 796 P.2d 1266. Because Pedro-Guerra is not similarly situated to those enjoying exemptions, we do not address the equal protection argument further.

III. Privileges and Immunities

¶ 27 "`[T]he privileges and immunities clause of the Washington State Constitution, article I, section 12, requires an independent constitutional analysis from the equal protection clause of the United States Constitution.'" Madison v. State, 161 Wash.2d 85, 94-95 n. 6, 163 P.3d 757 (2007) (quoting Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 806, 83 P.3d 419 (2004)); but see Andersen v. King County, 158 Wash.2d 1, ¶ 29, 138 P.3d 963 (2006) (plurality opinion) (holding that an independent state analysis only applies under article I, section 12 where the challenged law grants a privilege or immunity to a minority class, i.e., in the event of positive favoritism). Once the court has established that a state constitutional provision warrants an independent analysis from a federal constitutional provision, further Gunwall analysis is unnecessary. Madison, 161 Wash.2d at 94, ¶ 17, 163 P.3d 757; State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998); State v. Gunwall, 106 Wash.2d 54, 58, 720 P.2d 808 (1986).
¶ 28 A violation of article I, section 12, occurs when the law or its application confers a privilege to a class of citizens. City of Moses Lake, 150 Wash.2d at 812-13, 83 P.3d 419. For the purposes of article I, section 12, privileges are those fundamental rights which belong to the citizens of the state by reason of such citizenship, and include, inter alia, the right to carry on business, to acquire, hold, protect and defend property, the right to collect debts, and to enforce other personal rights. Id. Accordingly, the first step in considering a privileges and immunities claim is to determine whether the right in question is protected by article I, section 12. Madison, 161 Wash.2d at 94, ¶ 18, 163 P.3d 757. If so, the focus turns to whether and to what extent the clause provides greater protection, again using the Gunwall factors to guide the inquiry. Madison, 161 Wash.2d at 94, ¶ 19, 163 P.3d 757; Gunwall, 106 Wash.2d at 58, 720 P.2d 808.
*406 ¶ 29 Pedro-Guerra asserts that RCW 9.94A.533(3) runs afoul of the privileges and immunities clause by infringing on the fundamental right to bear arms[6] The State responds that the statute is not a regulation of the right to bear arms. Rather, it is simply a sentencing provision punishing criminal use of firearms. Further, the State contends that the exemption from sentence enhancement is not a "privilege" recognized under the privileges and immunities doctrine.
¶ 30 In State v. Ross, 152 Wash.2d 220, 240, 95 P.3d 1225 (2004), the appellant challenged the 2002 amendments to RCW 9.94A.525(12), which affected calculation of offenders scores. The Court explained that the appellant had failed to provide any authority that would support his claim that he has a fundamental right implicated by the application of the sentencing scheme amendments. Id. The court held that: "a defendant's equal protection rights are not violated `merely because the Legislature changed the standard sentencing range for a crime' or `changed its view of criminal punishment which resulted in offenders being subject to different punishment schemes.'" Id. at 240-41, 95 P.3d 1225 (quoting In re Pers. Restraint of Stanphill, 134 Wash.2d 165, 175, 949 P.2d 365 (1998)).
¶ 31 If the appellant's rights in Ross did not implicate article I, section 12, Pedro-Guerra's rights do not either. Both instances involved challenges to sentencing policies lawfully enacted by the Legislature. Although Pedro-Guerra's challenge does involve use of firearms, the firearm enhancement statute is not a regulation of the right to bear arms. Instead, it punishes those who commit felony offenses while armed with a firearm. Pedro-Guerra's privileges and immunities claim fails because the firearm enhancement statute does not impact a right that the privileges and immunities doctrine recognizes as "fundamental."

IV. Minnesota's Rational Basis Test

¶ 32 Washington courts employ the same rational basis test in both state and federal constitutional claims. See, e.g., Manussier, 129 Wash.2d at 672-73, 921 P.2d 473; Kustura v. Dep't of Labor & Indus., 142 Wash.App. 655, 684, 175 P.3d 1117 (2008), rev'g, 165 Wash.2d 1001, 198 P.3d 511 (2008).
¶ 33 Despite this long standing precedent, Pedro-Guerra advocates that Washington should adopt Minnesota's rational basis test when evaluating statutes under article I, section 12. He argues that adoption of this test would render RCW 9.94A.533 unconstitutional, as it is a more stringent.
¶ 34 A decision by the Supreme Court is binding on all lower courts in the state. Fondren v. Klickitat County, 79 Wash.App. 850, 856, 905 P.2d 928 (1995). It is error for the Court of Appeals not to follow directly controlling authority by the Supreme Court. 1000 Virginia P'ship v. Vertecs, 158 Wash.2d 566, 579, 146 P.3d 423 (2006); State v. Gore, 101 Wash.2d 481, 487, 681 P.2d 227 (1984). This court does not have the authority to adopt a different rational basis standard.

V. Sufficiency of the Evidence

¶ 35 Pedro-Guerra argues that there was insufficient evidence to show that he intended to inflict great bodily harm. He highlights various points in the record to show that some of the witnesses did not actually see him shoot the gun, suggesting that the State had not proved the intent element of assault.
¶ 36 This court reviews challenges to the sufficiency of the evidence using the tests found in State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992); State v. Fiser, 99 Wash.App. 714, 718, 995 P.2d 107 (2000). These tests identify evidence as being sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact *407 to find the essential elements of the crime beyond a reasonable doubt. A defendant claiming insufficiency admits the truth of the State's evidence and all reasonable inferences drawn in favor of the State, with circumstantial evidence and direct evidence being equally reliable. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. Credibility determinations may not be reviewed on appeal. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
¶ 37 Although Pedro-Guerra is correct that some of the witnesses, including Terrell and Officer Peterson, did not see him shoot the gun, Amber Johnson, another witness, did. She testified that she was riding the same bus as Pedro-Guerra and Terrell right before the shooting. She then described how all three of them got off the bus at the same stop  first Terrell, then her, then Pedro-Guerra. The person behind her, who she positively identified as Pedro-Guerra, pulled a black handgun and started shooting at Terrell as he ran.
¶ 38 Given the extensive testimony about the prior altercations between Pedro-Guerra and Terrell, and the fact that Pedro-Guerra was running after Terrell, a rational trier of fact could conclude beyond a reasonable doubt that Pedro-Guerra committed assault. A person is guilty of assault in the first degree if that person, with intent to inflict great bodily harm, assaults another with a firearm. RCW 9A.36.011. Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances. State v. Louther, 22 Wash.2d 497, 502, 156 P.2d 672 (1945). Viewing the evidence in the light most favorable to the State, and drawing all reasonable inference in favor of the State, a rational trier of fact could conclude that Pedro-Guerra acted with intent to inflict great bodily harm by shooting in the direction of Terrell. The evidence is sufficient to support his conviction of first degree assault.
¶ 39 We affirm.
WE CONCUR: SCHINDLER, C.J., and GROSSE, J.
NOTES
[1] Defense counsel elicited this testimony.
[2] Pedro-Guerra does not challenge the legitimacy of the statute's objective.
[3] This distinction alone would be a tenuous basis on which to find that Pedro-Guerra is not similarly situated to those enjoying exemptions, because like first degree assault, some of the exempted crimes are Class A felonies, and some constitute a "most serious offense" under RCW 9.94A.030(32), implicating the three strike rule. See RCW 9.94A.030(37), .570.
[4] This conclusion is consistent with the Sentencing Guideline Commission's statement. Courts may look to the comments of the Sentencing Guideline Commission in interpreting the sentencing reform act of 1981. In re Post Sentencing Rev. of Charles, 135 Wash.2d 239, 250-51, 955 P.2d 798 (1998). The Commission described the purpose of the Hard Time for Armed Crime initiative as broadening the application of firearm enhancements "to all felonies except those in which using a firearm is an element of the offense." STATE OF WASH. SENTENCING GUIDELINES COMMISSION, ADULT SENTENCING GUIDELINES MANUAL, II-62 (1996) (emphasis added).
[5] The reasoning in Berrier that the defendant was similarly situated to those enjoying exemptions does not apply here. 110 Wash.App. 651, 41 P.3d 1204. The Berrier court found that the appellant was similarly situated to the class of persons committing crimes exempt from enhancements because RCW 9.41.190(1) criminalizes possession of a short-barreled shotgun or rifle in the same way as it does possession of a machine gun. See Berrier, 110 Wash.App. at 649, 41 P.3d 1198. Because possession is a necessary element of the underlying crime in both possession of a short-barreled shotgun and possession of a machine gun, the purpose of the exemption was not furthered by subjecting possession of short-barreled shotgun or rifle to enhancements, but not possession of a shot gun. Berrier, 110 Wash.App. at 651, 41 P.3d 1198. The court then concluded that there was no rational basis for creating these two subclasses of offenders and found that the enhancement in this instance violated equal protection. Berrier, 110 Wash.App. at 651, 41 P.3d 1198.
[6] Alternatively, Pedro-Guerra advocates for a reinterpretation of the purpose and history of Washington's privileges and immunities clause, which would render a rule under which statutes creating unfair classifications or discriminating unfairly would implicate the clause (contrary to its current application  when the law or its application confers a privilege). The State asserts that, while it is clear that article I, section 12 requires an independent interpretation from the federal constitution, Pedro-Guerra fails to conduct a proper Gunwall analysis showing why the penal sentencing statute at issue here warrants a reevaluation of state privileges and immunities doctrine. We agree and do not address this issue further.