IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　　v.<br><br>KIMOTHY MAURICE WYNN,<br><br>　　　　　Appellant. | No. 86173-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Nearly three decades ago, when he was 17 years old, Kimothy Wynn was charged with unlawful delivery of a controlled substance. The case was filed in adult court because, for purposes of our criminal statutes, RCW 13.40.020(16) defines "juvenile" in a manner that excludes those previously prosecuted in adult court and Wynn had been prosecuted as an adult after the superior court declined juvenile jurisdiction on a different charge less than a year before the delivery charge. Wynn now challenges the constitutionality of RCW 13.40.020(16), asserting it conflicts with the holding set out by the United States Supreme Court in *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). Because *Kent* is factually distinguishable, as determined years ago by our state's Supreme Court, it is not controlling here and Wynn's challenge fails.

FACTS

Wynn was charged with assault in the first degree based on conduct that occurred on October 14, 1993, when he was 16 years old. Although the record of

that proceeding is not before this court, the parties agree that adult court exercised jurisdiction over the case after juvenile jurisdiction was declined.[1] Wynn resolved that case by way of a guilty plea to assault in the second degree in adult court and was sentenced on February 8, 1994.[2]

On December 9, 1994, when he was 17 years old, Wynn was charged with unlawful delivery of a controlled substance, alleged to have occurred on August 24, 1994. Because the adult court had previously obtained jurisdiction in the assault case, Wynn no longer met the statutory definition of "juvenile" and the adult court automatically retained jurisdiction over the drug delivery case. The version of the statute in effect at the time of the offense stated that a juvenile is "any individual who is under the chronological age of eighteen years *and who has not been previously transferred to adult court pursuant to* RCW 13.40.110." Former RCW 13.40.020(14) (1994) (emphasis added).[3]

Wynn entered into a plea agreement with the State to resolve the delivery charge whereby he entered a guilty plea in exchange for the prosecutor's recommendation of a 36-month prison sentence, community placement, and fines. In his statement of defendant on plea of guilty, Wynn accepted the following facts

---

[1] Irrespective of the parties' consensus that a decline hearing must have been conducted, the version of the Juvenile Justice Act, ch. 13.40 RCW, that was in effect when Wynn was charged with assault in 1993 directed that, "[u]nless waived by the court, the parties, and their counsel, a decline hearing shall be held where: . . . [t]he respondent is fifteen, sixteen, or seventeen years of age and the information alleges a class A felony." Former RCW 13.40.110(1)(a) (1990). At that time Title 13 RCW did not contain any provisions that required automatic transfer based on the particular circumstances alleged in that case.

[2] The parties agree to the fact of the guilty plea. The criminal history in the J&S for the subsequent delivery case lists a conviction for assault in the second degree with a date of violation in late 1993 and sentencing date of February 8, 1994.

[3] The pertinent provision at the time of Wynn's offense was RCW 13.40.020(14), which was subsequently modified and renumbered to provision (16). LAWS OF 2021, ch. 328, § 5.

as true: "On Oct. 25, 1994, in Pierce County, WA, I delivered cocaine to someone else. I know that it is illegal to deliver cocaine." The guilty plea does not contain a stipulation to the facts in the probable cause affidavit, but it does say that "[t]here is a factual basis for the plea" and Wynn and his attorney both signed it. On February 6, 1995, the trial court sentenced Wynn to 36 months in prison and community placement consistent with the agreement of the parties. This sentence was based, in part, on the criminal history set out in his judgment and sentence (J&S), which consists of a 1992 juvenile conviction for "UPCS" and the 1994 adult conviction for assault in the second degree.

In October 2022, Wynn filed a notice of appeal from the 1995 J&S in Division Two of this court, followed roughly a month later by a memorandum in support of the untimely notice of appeal. The State filed a response to Wynn's motion on November 21 and, on November 23, a commissioner of that division concluded that the "State has not demonstrated that the [a]ppellant voluntarily waived his right to [a]ppeal" and accepted the late notice of appeal for filing. On December 28, 2023, the case was transferred to this division.[4]

ANALYSIS

Title 13 RCW provides the juvenile division of the superior court with the authority to hear and decide particular juvenile matters. The Juvenile Justice Act of 1977 is set out in ch. 13.40 RCW and grants juvenile courts the "exclusive

---

[4] Prior to the transfer, on January 30, 2023, Wynn was granted an extension of time to file his opening brief. He then filed additional motions to extend time to file on April 10 and May 16, 2023, which the Division Two commissioner granted. The State's two requests for extensions of time to file its response brief were also granted.

original jurisdiction over all proceedings . . . [r]elating to juveniles alleged or found to have committed offenses" unless one of the exceptions applies. RCW 13.04.030(1)(e). "[T]he legislature intended the adult criminal court to have jurisdiction over a juvenile proceeding only by means of automatic decline based on the nature of the crime or as the result of an actual decline hearing where the juvenile court waives its own exclusive jurisdiction." *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 781, 100 P.3d 279 (2004). The current definition of "juvenile" under RCW 13.40.020(16) is

> any individual who is under the chronological age of 18 years and who has not been previously transferred to adult court pursuant to RCW 13.40.110, unless the individual was convicted of a lesser charge or acquitted of the charge for which [they were] previously transferred pursuant to RCW 13.40.110 or who is not otherwise under adult court jurisdiction.[5]

It is this definition, which automatically removes certain youth accused of crimes from the jurisdiction of juvenile court, that Wynn asserts is unconstitutional.

As a threshold matter, without acknowledging either the similarities or differences resulting from amendments, Wynn expressly challenges the current version of the statute, RCW 13.40.020(16), despite the fact that it is not the provision of the law that was applied to his case in 1994. Well-established case law limits our review to the pertinent statute in effect at the time of Wynn's conviction, which was former RCW 13.40.020(14). *See, e.g., In re Pers. Restraint of Canha,* 189 Wn.2d 359, 372, 402 P.3d 266 (2017) ("[W]e apply the law existing at the time of the conviction."); *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792

---

[5] RCW 13.40.110 provides a list of situations where the adult court may exercise jurisdiction over a juvenile, including a discretionary decline hearing and a mandatory decline hearing.

(2003) ("[W]e look to the statute in effect at the time [the defendant] committed the crimes."); *In re Pers. Restraint of Hartzell*, 108 Wn. App. 934, 944, 33 P.3d 1096 (2001) ("The law in effect at the time a criminal offense is committed controls disposition of the case."). Given that the central language of the statute at issue remained largely unchanged from the time when it operated to prevent Wynn's prosecution in juvenile court in 1994 to the present, the outcome of our analysis will achieve Wynn's stated goal. *Compare* former RCW 13.40.020(14) (1994) (". . . any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court pursuant to RCW 13.40.110"), *with* RCW 13.40.020(16) (". . . any individual who is under the chronological age of 18 years and who has not been previously transferred to adult court pursuant to RCW 13.40.110"). However, consistent with our case law, we refer to the version of the statute that applied to Wynn.

While never expressly acknowledging it as such or even setting out the relevant standard of review, Wynn presents a facial challenge to the constitutionality of the statute by arguing that its definition of "juvenile" improperly removes an entire class of minors accused of crimes to adult court. A facial challenge to the constitutionality of a statute avers that there are *no* circumstances in which the statute can be administered constitutionally. *State v. Fraser,* 199 Wn.2d 465, 486, 509 P.3d 282 (2022). "The remedy for facial unconstitutionality 'is to render the statute totally inoperative.'" *Id.* (quoting *City of Redmond v. Moore,* 151 Wn.2d 664, 669, 91 P.3d 875 (2004)). A statute is presumed to be constitutional and the challenger must prove its invalidity beyond a reasonable

doubt. *Id.* at 475. We review facial constitutional challenges de novo. *State v. Hunley*, 175 Wn.2d 901, 908, 287 P.3d 584 (2012).

I.      Statute Does Not Conflict with United States Supreme Court Authority

Wynn contends that the definition of "juvenile" in former RCW 13.40.020(14) directly contradicts the holding in *Kent* that underage offenders must be afforded specific due process protections before their case may be transferred to adult court. Kent was arrested when he was 16 years old and subject to the exclusive jurisdiction of the juvenile court under the District of Columbia Code. *Kent,* 383 U.S. at 543. At the time of arrest, he was still on probation for a previous offense committed when he was 14. *Id.* After learning of the possibility that the juvenile court could decline jurisdiction of the new case and remove it to adult court, defense counsel arranged for Kent to undergo a psychological evaluation to support a motion to oppose transfer. *Id.* at 545. The defense also moved to request access to Kent's social service file, which had been created by the juvenile court. *Id.*

The juvenile court judge waived jurisdiction over Kent's pending case without a hearing, a statement of findings, or a reason for the waiver. *Id.* at 546. The judge did not rule on Kent's motions. *Id.* Nonetheless, the order stated the judge had conducted a "full investigation" as required by the Juvenile Court Act.[6] *Id*. at 546-48. The United States Supreme Court granted certiorari to address Kent's due process challenges to the proceedings. *Id.* at 552. The Court recognized that the statute conveys to the juvenile court a "substantial degree of

---

[6] Former D.C. Code § 11-914 (1961).

discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached," but that the statutory scheme "does not confer upon the [j]uvenile [c]ourt a license for arbitrary procedure." *Id.* at 553. Because a transfer to adult court has "tremendous consequences," it reasoned there must be a hearing, effective assistance of counsel, and a statement of reasons for the transfer. *Id.* at 554.

There are two critical and related distinctions between Wynn's case and the facts of *Kent*. The first is that *Kent* expressly addresses the "statutory rights of the juvenile" under the D.C. code and explains that the "[j]uvenile [c]ourt is vested with 'original and exclusive jurisdiction' of the child." *Id.* at 556. This is not the case in Washington. *See* RCW 13.04.030(1)(e) ("*Except as provided* in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings: . . . Relating to juveniles alleged or found to have committed offenses . . . as provided in RCW 13.40.020 through 13.40.230." (emphasis added)). Second, a difference that naturally flows from the divergence in statutes at issue, is that the direction of procedural steps outlined in *Kent* necessarily applies to situations where juvenile jurisdiction is the starting point and the juvenile court has *discretion* to decide whether or not to transfer jurisdiction to adult court, not where there was never juvenile jurisdiction to begin with, as is the case under our statutory framework. Again, Wynn is attacking the particular provision of the statute that exempts certain youth from juvenile jurisdiction based on their previous prosecution in adult court. Under the statutory scheme established by our legislature, a juvenile court in Washington is not required, and in fact is unable to

conduct a hearing or make a record of the reasons for transfer for juveniles with previous adult prosecutions, as occurred in *Kent,* because *there is no transfer* of jurisdiction; the statute expressly exempts this category of young defendants from juvenile jurisdiction from the inception of their case. Because former RCW 13.40.020(14), as well as the current version, conveys no discretion to the juvenile court, *Kent* is not controlling here.

Wynn's counsel's vehement assertion during oral argument before this court that "[*Kent*] never says discretion"[7] is simply inaccurate. The plain language of that opinion clearly establishes that the question of whether the juvenile court has discretion to decline jurisdiction was a pivotal factor in the Court's reasoning. The majority in *Kent* begins its analysis by explaining,

> We agree with the Court of Appeals that the [D.C.] statute contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or—subject to the statutory delimitation—should waive jurisdiction. But this latitude is not complete. . . . The [D.C.] statute gives the Juvenile Court a substantial degree of *discretion* as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary procedure.

383 U.S. at 552-53 (emphasis added). The analysis focuses on determining the scope of the discretion conferred to the juvenile court by the statute and the manner by which it is exercised. The Court therefore also identifies the rights of the juvenile during that process. Later in *Kent*, the Court considered an earlier case arising out of the same D.C. Code provision which also addressed waiver of

---

[7] *Wash. Ct. of Appeals oral argument, State v. Wynn*, No. 86173-5-I (Mar. 12, 2024), at 16 min., 43 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024031221/.

original juvenile jurisdiction, noting "'waiver can be ordered only after 'full investigation,' and by guarding against action of the Juvenile Court beyond its *discretionary* authority.'"  *Id.* at 559 (quoting *Watkins v. United States*, 119 U.S. App. D.C. 409, 413, 343 F.2d 278 (1964)).  The majority then moves on to explain what an appropriate exercise of this discretion requires in order to protect the rights of the juvenile offender, but again frames it in terms of the relevant statute that confers original jurisdiction over juveniles.

> Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver [of original juvenile jurisdiction under the D.C. Code] including, of course, a statement of the relevant facts.  It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made.  Accordingly, we hold it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact.  But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

*Id.* at 561.  Again, the plain language of *Kent* establishes that the Supreme Court was considering the scope of due process protections afforded to juveniles "suspected of serious offenses" within a statutory scheme that conferred both original jurisdiction and discretion to waive or transfer that jurisdiction.  *Id.* at 543. Wynn challenges the statutory definition of "juvenile" set out in former RCW 13.40.020(14), and the current version, within our Juvenile Justice Act. That section exempted him from the jurisdiction of the juvenile court such that it had no discretion to exercise.  *Kent* simply does not control here.

More critically with regard to the procedural posture of this case, our state Supreme Court has already engaged in a similar analysis of our distinct statutory scheme in *State v. Watkins*, which is binding authority on this court and the trial courts.[8] 191 Wn.2d 530, 423 P.3d 830 (2018). In *Watkins*, our Supreme Court concluded that automatic declination of jurisdiction pursuant to the Juvenile Justice Act does not violate *Kent*. *Id.* at 533. Although the court in that case was asked to determine whether the auto-decline procedure set out under a different section[9] of the chapter now challenged was constitutional, that statute involves a similar operation of law regarding adult court jurisdiction over juveniles. Accordingly, we may reasonably rely on the analysis provided by *Watkins* to guide our review in the instant case.

The court in *Watkins* highlighted that the D.C. code at issue in *Kent* granted the juvenile court jurisdiction over *all* juvenile proceedings, along with the *discretion* to waive it for certain defendants. *Id.* at 540. In contrast, the Washington statute requires automatic transfer in specific circumstances and a prerequisite hearing within the framework of these statutory requirements would be "absurd" because the juvenile court is precluded from presiding over the case from its inception. *Id.* at 541. Based on the crucial difference between discretionary and automatic declination, the court concluded that "*Kent*'s holding must be limited to

---

[8] *State v. Pedro*, 148 Wn. App. 932, 950, 201 P.3d 398 (2009) ("A decision by the Supreme Court is binding on all lower courts in the state. It is error for the Court of Appeals not to follow directly controlling authority by the Supreme Court." (citations omitted)).

[9] Former RCW 13.04.030(1) (2009) provided exceptions to the juvenile court's exclusive jurisdiction and specifically directs the automatic decline to adult court for 16- and 17-year-old individuals charged with specific offenses.

circumstances where a juvenile court has statutory authority to hear a particular case." *Id*.

There is functionally no distinction between the statute under review in *Watkins* and former RCW 13.40.020(14), which Wynn challenges here. When asked at oral argument how an intermediate appellate court such as this one could disregard controlling precedent of our state Supreme Court, Wynn's counsel repeatedly asserted, without citation to any other authority, that the supremacy clause of the United States Constitution requires this court to overrule *Watkins* on the basis of *Kent*[10] and consequently disregard the well-established hierarchy of our state courts. In addition to being a gross oversimplification of the operation of the supremacy clause, this assertion is, again, plainly incorrect. *See, e.g., State v. Jussila,* 197 Wn. App. 908, 931, 392 P.3d 1108 (2017) ("We must follow [Washington] Supreme Court precedence, regardless of any personal disagreement with its premise or correctness."); *State v. Brown*, 13 Wn. App. 2d 288, 291, 466 P.3d 244 (2020) ("[A] decision by the Washington Supreme Court is binding on all lower courts of the state."); *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) ("[O]nce [the Washington Supreme Court] has decided an issue of state law, that interpretation is binding on all lower courts until it is overruled by [the Washington Supreme Court]."). We are bound by the controlling authority of our Supreme Court in *Watkins*, the holding of which necessarily requires rejection of Wynn's challenge based on *Kent.*

---

[10] Wash. Ct. of Appeals oral argument, *supra,* at 3 min., 54 sec.

II.    Definition of Juvenile in RCW 13.40.020 Does Not Violate Due Process

Wynn distinguishes his challenge to former RCW 13.40.020(14) under *Kent* from his argument that the statute separately violates the due process protections of the Fifth and Fourteenth Amendments to the United States Constitution, but again fails to set out the legal test for such a challenge, much less apply it. Consequential to this aspect of his argument, due process was expressly part of the analysis in *Watkins*. There, our Supreme Court plainly held that "automatic decline does not violate due process because juveniles do not have a constitutional right to be tried in juvenile court." *Watkins,* 191 Wn.2d at 533. That holding is premised on a wealth of case law. *See, e.g., State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004) ("[T]he right to be tried in a juvenile court is not constitutional and the right attaches only if a court is given statutory discretion to assign juvenile or adult court jurisdiction."); *In re Pers. Restraint of Boot*, 130 Wn.2d 553, 571, 925 P.2d 964 (1996) ("'There is no constitutional right to be tried in a juvenile court.'" (quoting *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990))); *State v. Maynard*, 183 Wn.2d 253, 259, 351 P.3d 159 (2015) ("[A] defendant has no constitutional right to be tried as a juvenile."). The automatic decline statute has the same practical effect as the definitional statute Wynn challenges: by operation of the plain language set out by our legislature, certain classes of juveniles are excluded from juvenile jurisdiction, either because of their age and the nature of their charges, or because they were previously prosecuted in adult court. Because of this functional similarity, and the nature of this challenge, *Watkins* controls our analysis. We are bound by the holding in *Watkins* that a

- 12 -

statute declining to extend juvenile jurisdiction in certain circumstances does not violate due process because there is no right to be tried in juvenile court.

III.     Failure To Establish Racial Disproportionality

Finally, Wynn avers that this court must take judicial notice of the racially disproportional effects of former RCW 13.40.020(14), and the current version , on youth who are Black, Indigenous, and People of Color (BIPOC).  He references previous judicial acknowledgment of racial bias against Black defendants in other opinions and cites a single study conducted by the University of Washington written over fifteen years after Wynn's conviction that demonstrated that BIPOC children are overrepresented in adult court.  We certainly do not deny the systematic racism embedded in our criminal legal system and the importance of recognizing bias in the disproportionate outcomes among particular communities, whether they result from over policing, charging decisions of individual prosecutors, or other decisions within the courts.  However, in order to address these concerns in the context of statutory exclusion from juvenile jurisdiction based on a prior prosecution in adult court, as Wynn is requesting, we must have a record which includes comprehensive, robust, conclusive data contemporaneous to the time the statute in question applied to the defendant through the present.  That data must make a sufficient connection between former RCW 13.40.020(14), and the current version, and racially disproportionate outcomes of BIPOC children appearing in adult court such that we are confident that the statute is facially unconstitutional.  Again, Wynn's burden in presenting a facial challenge to a statute is to demonstrate that there are no circumstances where it can be applied in a

constitutional manner. *Fraser,* 199 Wn.2d at 486. In the context of a record devoid of transcripts of any proceedings or facts to connect the claims to himself specifically, the single sentence citation to a study conducted over 15 years after his conviction that Wynn relies on to support his efforts to deem a statute unconstitutional, is plainly insufficient to carry his burden on appeal with regard to this aspect of his challenge.

Finding no error, we affirm.

WE CONCUR: