[No. 21579-9-II. Division Two. December 11, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC WAYNE FAUST, *Appellant*.

*Brent W. Basden* of *Wolfley Hoffer Basden, P.S.*, for appellant.

*David H. Bruneau, Prosecuting Attorney*, for respondent.

ARMSTRONG, J. — On July 7, 1996, Eric Wayne Faust assaulted his wife over a several hour period. During the assault, Faust held a knife to her throat and pointed a .380 semiautomatic pistol at her. Faust was charged and convicted of second degree assault with a deadly weapon and a firearm in violation of RCW 9A.36.021, 9.94A.125, 9.41.010. His sentence included 36 months for the firearm

enhancement.[1] Faust challenges the 36-month enhancement, arguing that the gun did not meet the statutory definition of firearm because it was inoperable due to a mechanical defect. We conclude that the gun met the definition of a firearm under the statute even though it malfunctioned. We, therefore, affirm.

## FACTS

Annette Faust testified that before the day of the assault her husband's gun had not been working. He told her that "it was jamming or something was wrong with it and it didn't work." But, on the day of the assault, he told her that it had been repaired. Initially, Annette did not believe that the gun had been repaired. But when she saw that he had bullets and was putting the clip into the gun, she "got really, really scared" and thought that maybe he had gotten it fixed. Although Faust had difficulty putting the clip into the gun, he did get the magazine closed after he dug around with the knife. The gun jammed.

The police tested the gun and could not get it to fire. They inserted the magazine into the gun that Faust had used and pulled back the slide. When the slide moved forward, the round jammed and would not go into the chamber. The officers used .380 caliber ammunition. They also tried, without success, to manually load a round into the chamber. An officer testified that it might be possible to fire the gun using smaller ammunition, such as a .32 caliber round. But the police did not test this theory and found only .380 caliber ammunition in the Faust home.

Faust argues that a gun that is incapable of being fired during the crime due to mechanical defect is not a "firearm" for purposes of sentence enhancement.

Faust's sentence was enhanced under RCW 9.94A.310(3)(b), which provides a mandatory three-year sentence enhancement for second degree assault "[i]f the

---

[1]Because both sentence enhancements were based on the same criminal conduct, his actual sentence was 45 months.

offender . . . was armed with a firearm as defined in RCW 9.41.010."[2] RCW 9.41.010(1) defines a firearm as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder."

## ANALYSIS

In construing a statute, we look to the intent of the Legislature. *State v. Williams*, 62 Wn. App. 336, 338, 813 P.2d 1293 (1991). To determine legislative intent, we first consider the language of the statute. Plain language does not require construction. *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). But a statute that is susceptible to two or more reasonable interpretations is ambiguous. *State v. Sunich*, 76 Wn. App. 202, 206, 884 P.2d 1 (1994); *State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986). Thus, to determine the meaning of an ambiguous statute, we must look to other sources of legislative intent. *See State v. Rhodes*, 58 Wn. App. 913, 915-16, 795 P.2d 724 (1990) (citing 3 CHARLES DALLAS SANDS, STATUTORY CONSTRUCTION § 59.03 (4th ed. 1986)).

Here, the definition of firearm is ambiguous. The language "a weapon or device from which a projectile or projectiles *may be fired*" clearly indicates that a firearm must be capable of firing a projectile at some point in time. But it is not clear whether the firearm must be operable at the time when the crime is committed. Therefore, we look to other sources to determine whether the Legislature intended to limit the firearm enhancement statute to a

---

[2]RCW 9.94A.310 provides in pertinent part:

(3) The following additional times shall be added to the presumptive sentence for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. . . .

. . . .

(b) Three years for any felony defined under any law as a class B felony or with a maximum sentence of ten years, or both . . . .

Second degree assault is a class B felony. RCW 9A.36.021(2).

firearm that was operable at the time when the crime is committed.

The current penalty enhancements for offenders armed with firearms were enacted under the "Hard Time for Armed Crime Act." LAWS OF 1995, ch. 129 (Initiative Measure No. 159) (codified at RCW 9.94A.310). Although the drafters of the Act documented their findings and intent, the findings do not deal with whether a firearm must be operable during the commission of the crime. With regard to guns, the drafters specifically found that "[c]urrent law also fails to distinguish between gun-carrying criminals and criminals carrying knives or clubs." LAWS OF 1995, ch. 129, § 1(1)(d). By increasing penalties, the people of Washington intended to "[d]istinguish between the gun predators and criminals carrying other deadly weapons and provide greatly increased penalties for gun predators . . . ." LAWS OF 1995, ch. 129, § 1(2)(c).[3]

 But because the Hard Time for Armed Crime Act incorporates the definition of "firearm" used in the

---

[3]The entire statement of findings and intent provides:

(1) The people of the state of Washington find and declare that:

(a) Armed criminals pose an increasing and major threat to public safety and can turn any crime into serious injury or death.

(b) Criminals carry deadly weapons for several key reasons including: Forcing the victim to comply with their demands; injuring or killing anyone who tries to stop the criminal acts; and aiding the criminal in escaping.

(c) Current law does not sufficiently stigmatize the carrying and use of deadly weapons by criminals, and far too often there are no deadly weapon enhancements provided for many felonies, including murder, arson, manslaughter, and child molestation and many other sex offenses including child luring.

(d) Current law also fails to distinguish between gun-carrying criminals and criminals carrying knives or clubs.

(2) By increasing the penalties for carrying and using deadly weapons by criminals and closing loopholes involving armed criminals, the people intend to:

(a) Stigmatize the carrying and use of any deadly weapons for all felonies with proper deadly weapon enhancements.

(b) Reduce the number of armed offenders by making the carrying and use of the deadly weapon not worth the sentence received upon conviction.

Uniform Firearms Act (codified at RCW 9.41), two additional principles of statutory construction are useful. First, where a statute is unclear, we may resort to contemporaneous construction to determine legislative intent. *Bernard v. Benson*, 58 Wash. 191, 194-95, 108 P. 439 (1910). Second, because the Legislature is presumed to know of the decisions of the Washington Supreme Court, the court's prior use or interpretation of a term will be considered in ascertaining the meaning of a statute. *Gimlett v. Gimlett*, 95 Wn.2d 699, 702, 629 P.2d 450 (1981); *Miller v. Paul Revere Life Ins. Co.*, 81 Wn.2d 302, 308, 501 P.2d 1063 (1972).

Before 1983, "firearm" was not defined under the Uniform Firearms Act.[4] Instead, Former RCW 9.41.010(1) simply provided: " 'Short firearm' or 'pistol' as used in RCW 9.41.010 through 9.41.160 means any firearm with a barrel less than twelve inches in length." Former RCW 9.41.010(1) (1971). But in April of 1983, the Legislature amended the Uniform Firearms Act and added the following definition: " '[f]irearm' as used in this chapter means a weapon or device from which a projectile may be fired by an explosive such as gunpowder." LAWS OF 1983, ch. 232, § 1(3).

Just two months earlier, the Washington Supreme Court decided *State v. Pam*, 98 Wn.2d 748, 659 P.2d 454 (1983), *overruled on other grounds by State v. Brown* 111 Wn.2d 124, 761 P.2d 588 (1988). In *Pam*, the court said:

(c) Distinguish between the gun predators and criminals carrying other deadly weapons and provide greatly increased penalties for gun predators and for those offenders committing crimes to acquire firearms.

(d) Bring accountability and certainty into the sentencing system by tracking individual judges and holding them accountable for their sentencing practices in relation to the state's sentencing guidelines for serious crimes.

LAWS OF 1995, ch. 129, § 1.

[4]LAWS OF 1935, ch. 172, § 18 (codified as amended RCW §§ 9.41.010-9.41.810).

Under RCW 9.41.025,[5] the State must prove the presence of a "firearm," which is defined under WPIC 2.10 as a "weapon from which a projectile may be fired by an explosive such as gun powder." *A gun-like object incapable of being fired is not a "firearm" under this definition.*

*Pam*, 98 Wn.2d at 753-54 (footnote omitted) (emphasis added).

In *Pam*, four witnesses testified that the defendant had a gun or shotgun when he robbed an auto parts store. The weapon fell apart as he was fleeing. The police recovered "the wooden firestock of 'what appeared to be a shotgun' " but no bullets were recovered. *Pam*, 98 Wn.2d at 751, 754.

The issue in *Pam* was whether the trial court committed harmless error in failing to instruct the jury on the reasonable doubt standard for the deadly weapon and firearm sentence enhancements. *Id.* at 752. The court concluded that the error was not harmless because the jury could have had a reasonable doubt as to the "operability of the weapon." *Id.* at 755. This language could be read as limiting the definition of firearm to a gun that was operable at the time of crime. But a careful reading of *Pam* reveals otherwise. The *Pam* court attempted to distinguish between a true firearm and a "gun-like object incapable of being fired," and cited *State v. Tongate*, 93 Wn.2d 751, 613 P.2d 121 (1980), for the rule that such a "gun-like object" was not a firearm. *Pam*, 98 Wn.2d at 753-54.

In *Tongate*, the defendant was convicted of first degree robbery with a special finding that he was armed with a deadly weapon. The jury was instructed that a firearm was a deadly weapon and that: "The prosecution is not required to prove that a pistol, revolver or other type of firearm was loaded or even that it was capable of being fired." *Tongate*,

---

[5]At the time, RCW 9.41.025 was the section of the Uniform Firearms Act that provided enhanced penalties for committing crimes while "armed with a firearm." Former RCW 9.41.025(1). This section was repealed effective July 1, 1984. Laws of 1981, ch. 137, § 38; Laws of 1982, ch. 10, § 17; Laws of 1993, ch. 2, § 20; Laws of 1984, ch. 209, § 31.

93 Wn.2d at 753. But the jury was not instructed that the State had to prove the deadly weapon enhancement beyond a reasonable doubt. On appeal, Tongate argued this was error. The State argued, in part, that the error was harmless because to convict of first degree robbery, the jury necessarily found that the defendant was armed with a deadly weapon.

The court rejected this argument because the first degree robbery statute could be violated either by being armed with a deadly weapon, or by displaying "what appear[ed] to be a firearm . . . ." *Tongate*, 93 Wn.2d at 755. Thus, the court concluded that the jury could have convicted the defendant of robbery if it found that he had a toy gun, but it could not have found the deadly weapon enhancement unless it found "the presence of a deadly weapon in fact." *Id.* In this context, the court used interchangeably the terms "toy gun" and "a gun-like but nondeadly object." *Id.* And the trial court's instruction that a firearm deadly weapon need not be loaded or even capable of being fired was not challenged. In short, the *Tongate* language relied upon by *Pam* did not limit the definition of a firearm to one capable of being fired during the crime. Rather, the distinction was between a toy gun and a gun "in fact." Moreover, the unchallenged instruction in *Tongate* made clear that an unloaded gun, or one incapable of being fired, was still a deadly weapon within the meaning of the statute.

█ In conclusion, when the Legislature adopted the definition of a firearm in 1983, the Washington Supreme Court had clearly set out the definition of firearm in both *Tongate* and *Pam*. And the definition did not limit firearms to only those guns capable of being fired during the commission of the crime. Rather, the court characterized a firearm as a gun in fact, not a toy gun; and the real gun need not be loaded or even capable of being fired to be a firearm.

In addition, we have consistently held that an unloaded

weapon is a deadly weapon.[6] *See State v. Sullivan*, 47 Wn. App. 81, 733 P.2d 598 (1987); *State v. Rahier*, 37 Wn. App. 571, 681 P.2d 1299 (1984); *State v. Beaton*, 34 Wn. App. 125, 128, 659 P.2d 1129 (1983). These cases presented challenges to penalties for deadly weapons enhancements under former RCW 9.95.040 (*Rahier* and *Beaton*) and RCW 9.94A.310(3)(a); RCW 9.94A.125 (*Sullivan*). In each case the definition of a deadly weapon included firearm, although the term was not defined.

In *Sullivan*, we held that the Legislature did not intend to change the case law on unloaded weapons by adding the following language to the definition of deadly weapon under RCW 9.94A.125: " '[A] deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death.' " *Sullivan*, 47 Wn. App. at 82 (emphasis omitted). We reasoned that the Legislature did not expressly state that a firearm must be loaded. *Id.* at 84. In addition, we noted two policy considerations: (1) a loaded or unloaded gun creates the same apprehension in the victim; and (2) an unloaded gun can be loaded during the commission of a crime and, therefore, has the same potential to inflict violence. *Id.* At least one of the policies applies here as Faust intended to create apprehension in his wife. Further, the potential to inflict violence also exists with a malfunctioning gun. If an unloaded gun can be loaded, a malfunctioning gun can be fixed.

The Legislature has expressed its intent to eliminate the criminal use of firearms. Such intent should not be frustrated by the happenstance of a malfunctioning gun.

We affirm.

---

[6]The State also points out that eyewitness testimony to a real gun that is neither discharged nor recovered is sufficient to support deadly weapons and/or firearms penalty enhancements. *See State v. Bowman*, 36 Wn. App. 798, 803-04, 678 P.2d 1273 (1984); *State v. Mathe*, 35 Wn. App. 572, 582, 668 P.2d 599 (1983); *State v. Goforth*, 33 Wn. App. 405, 411, 655 P.2d 714 (1982).

HOUGHTON, C.J., and HUNT, J., concur.