IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69552-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LIBAN HASSAN ADEM, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 2, 2014 |

SCHINDLER, J. — In this prosecution for the armed robbery of a jewelry store,
Liban Hassan Adem contends the trial court violated his right to a speedy trial under
CrR 3.3, and the evidence does not support the determination that he was armed with a
firearm.[1] We affirm.

## FACTS

The State charged Liban Hassan Adem with first degree robbery with a firearm
enhancement and first degree unlawful possession of a firearm. The State alleged
Adem robbed a jewelry store while armed with a firearm.

On February 28, 2012, the court held an arraignment hearing. Over the course
of the next six months, the court granted six continuances.

---

[1] After filing his appeal, Adem moved to withdraw the argument that he received ineffective
assistance of counsel, and we granted the motion to withdraw that assignment of error.

Adem agreed to the first two continues requested by his attorney. On June 1, 2012, defense counsel requested a third continuance to interview witnesses. Over Adem's objection, the court granted the continuance. The court scheduled July 16, 2012 as the new trial date with an expiration date of August 15, 2012.

On July 13, 2012, defense counsel requested an eight-day continuance to July 25, 2012 to arrange for a Vietnamese interpreter to be present at the interview of the victim. The prosecutor requested a 30-day continuance because the forensic laboratory testing on the items found at the crime scene, including a green sweatshirt, had not been completed due to a backlog at the lab.

Defense counsel stated that Adem objected to the longer continuance. Defense counsel said she had promised Adem a continuance would be short and "arguably, the State has had a significant amount of time to have those tests completed."

The prosecutor responded that forensic testing had been requested "months ago." The prosecutor also noted that Adem was being held on separate burglary charges and that a third burglary charge was going to be filed. The prosecutor also stated that the other cases had later trial dates.

The court granted a 30-day continuance of the trial. The written order prepared by defense counsel states that the continuance was requested by the defense in order to interview the victim and was "required in the administration of justice." The order set a new trial date of August 13, 2012 with an expiration date of September 12, 2012.

On August 3, 2012, the parties informed the court that laboratory testing had been completed and Adem's DNA[2] was found on the sweatshirt. Defense counsel

---

[2] (Deoxyribonucleic acid.)

2

requested a continuance to September 5, 2012 to review the test results. The attorney told the court, "I feel that it's absolutely critical to effectively be prepared for this case."

Over Adem's objection to the continuance, the court granted the continuance as required in the administration of justice, stating, "There is good cause for continuing the trial date to allow [defense counsel] to be adequately prepared to represent [Adem]." The court scheduled a trial date for September 5, 2012 with an expiration date of October 5, 2012.

On August 16, 2012, defense counsel moved to continue the trial to October 1, 2012. Defense counsel stated the additional time was necessary to explore whether a DNA defense expert would be utilized. Defense counsel also stated that she was in trial on another case that would last for two more weeks. Over Adem's objection, the court granted the continuance "in the interest of justice," setting a new trial date for October 1, 2012 with an expiration date of October 30, 2012.

The trial commenced on October 4, 2012. Adem waived his right to a jury. The evidence at trial established that around noon on February 9, 2012, Lang Huynh was working at Ty Kim Huong Jewelry Store in White Center when four men entered the store wearing hooded sweatshirts and bandanas over their faces. Store surveillance cameras showed a man in a green hooded sweatshirt wielding what appeared to be a semiautomatic gun. The man held the gun to Huynh's head and forced her to turn over $20,000 to $30,000 worth of jewelry. At one point, the man pulled back the slide on the gun and it appeared to eject a bullet from the chamber. The men took almost everything in the store and then ran out the back of the store to a gray van.

The driver of the van Antonio Ortiz testified at trial. Ortiz identified Adem at trial as one of the robbers. Ortiz testified that Adem was wearing a bright green hooded sweatshirt before and after the robbery. After viewing the security video, Ortiz said that Adem was the person in the green sweatshirt with the gun.

Nick Crimp worked near the jewelry store and parked behind the store on the day of the robbery. Crimp testified that he saw a gray van parked in the alley and noticed the driver was hiding part of his face. Crimp watched as three or four people wearing bandanas over their faces ran from the back of the jewelry store carrying trays. One of the men dropped a gun that skidded across the pavement and "sounded like metal sliding across pavement." Crimp testified that the gun was a black semiautomatic pistol. After seeing the gun, Crimp hid behind a truck. After the robbers left in the van, Crimp called the police.

Ortiz said that he drove the van to an apartment complex where a codefendant and Adem's cousin Liban Warfa lived with his family. The van belonged to the Warfa family. Police located the van near a dumpster in the apartment complex parking lot. Within an hour of calling police, Crimp identified the van at the complex, noting distinct characteristics such as damage to the front driver's side and a missing rearview mirror. Police found stolen jewelry and a pistol holder in the van. They found more jewelry and five display trays in a Crown Victoria owned by the Warfa family.

Hassan Warfa told police that he saw several males, including his brother Liban and his cousin Adem, exit the van.[3] Hassan chased Adem around the corner and saw all the males leave in a separate car. Hassan testified that Liban and Adem were

---

[3] We refer to Liban Warfa and Hassan Warfa by their first names for purposes of clarity.

together at his family's apartment on the evening before the robbery and that he gave Liban the van keys around 10:30 a.m. on the morning of the robbery.

Ortiz testified that when they got out of the van, he saw Adem take off his green hooded sweatshirt. A resident of the apartment complex also saw three people running through the parking lot and a fourth man throwing a green article of clothing into a dumpster.

Police found a jewelry tray, a round of ammunition on the tray, and a green sweatshirt in the dumpster next to the van. Forensic testing identified Adem's DNA on the green sweatshirt. The evidence also established the ammunition found in the dumpster was designed for the type of gun used in the robbery.

When arrested, Adem gave police a false name. In a phone call from jail, Adem admitted that he mouthed a threat of physical harm to Ortiz during his testimony at trial. The court convicted Adem as charged. Adem appeals.

## ANALYSIS

Adem contends the trial court violated CrR 3.3 by granting continuances requested by the defense attorney over his objection without a sufficient inquiry and a finding of good cause.

Under CrR 3.3(b)(1)(i), an individual held in custody pending trial must be tried within 60 days of arraignment. Certain time periods, including continuances, are excluded from the 60-day requirement. CrR 3.3(e). A continuance sought "by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2).[4] Recently, our supreme court held that a continuance sought to enable counsel to

---

[4] (Emphasis added.)

investigate or prepare for trial is "binding" on the defendant even if the defendant objects to the continuance. State v. Ollivier, 178 Wn.2d 813, 825, 312 P.3d 1 (2013).

The State contends, and Adem does not dispute, that Ollivier and CrR 3.3(f)(2) are controlling here.[5] All of the challenged continuances were requested by defense counsel, and all but one were sought in order to prepare for trial. The one exception was a continuance to pursue a global resolution of the charges in this case and another case, and Adem expressly agreed to that continuance. Thus, any objections to the continuances requested by defense counsel were waived.

Adem also contends the court abused its discretion in granting the request made by the State on July 13, 2012 for a 30-day continuance. Adem suggests in passing that defense counsel's simultaneous request for a one-week continuance did not waive his objection to the longer 30-day continuance requested by the State. Adem fails, however, to cite any authority supporting that proposition.[6] But even assuming objections to the State's continuance were not waived, Adem has not demonstrated a violation of his speedy trial right.

Before the court granted the continuance on July 13, 2012, the speedy trial expiration date was August 15, 2012. On August 3, 2012, well before the August 15 expiration date, the DNA test results became available and the defense moved for a

---

[5] Ollivier was decided after Adem filed his opening brief. In its response brief, the State relied heavily on Ollivier, stating that it "controls this case." Adem does not address Ollivier or the speedy trial issue in his reply brief.

[6] The two cases Adem cites, State v. Saunders, 153 Wn. App. 209, 220 P.3d 1238 (2009), and State v. Kenyon, 167 Wn.2d 130, 216 P.3d 1024 (2009), were distinguished in Ollivier and are inapposite. In Saunders, the continuances were granted over the defendant's objection to permit plea negotiations. Ollivier, 178 Wn.2d at 824-25. In Kenyon, the record failed to document the reasons for the continuances. Ollivier, 178 Wn.2d at 825. Further, Kenyon involved continuances to accommodate missing judges and not continuances to allow the defense to prepare for trial. Ollivier, 178 Wn.2d at 825.

continuance for additional time to review the results. On August 16, 2012, the defense moved for another continuance to explore retention of an expert.

Because the trial commenced before the new speedy trial expiration date, there was no violation of the speedy trial time limit.

Adem also contends the firearm enhancement and conviction for unlawful possession of a firearm were not supported by sufficient evidence that he was armed with a firearm.

Evidence is sufficient to sustain a conviction or enhancement if, when viewed in a light most favorable to the State, it permits a rational trier of fact to find the elements of the crime or enhancement beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); State v. McKee, 141 Wn. App. 22, 30, 167 P.3d 575 (2007). A defendant challenging the sufficiency of the evidence admits the truth of the evidence and all rational inferences that may be drawn from it. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Circumstantial and direct evidence are equally probative, and we defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence. State v. Raleigh, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010), review denied, 170 Wn.2d 1029, 249 P.3d 624 (2011).

To convict Adem of unlawful possession of a firearm or impose a firearm enhancement, the State had the burden of proving that Adem or an accomplice was armed during commission of the crime with a "firearm," i.e., "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(9). Citing State v. Recuenco, 163 Wn.2d 428, 180 P.3d 1276 (2008), and several other cases, Adem contends this burden required the State to prove the

firearm was "operable." See Recuenco, 163 Wn.2d at 437 ("We have held that a jury must be presented with sufficient evidence to find a firearm operable . . . in order to uphold the enhancement."); State v. Pam, 98 Wn.2d 748, 754, 659 P.2d 454 (1983) ("A gun-like object incapable of being fired is not a 'firearm.' "); State v. Pierce, 155 Wn. App. 701, 714 n.11, 230 P.3d 237 (2010) (Where the firearm is not presented as evidence, there must be "other evidence of operability, such as bullets found, gunshots heard, or muzzle flashes.").

The State disagrees, arguing sufficient evidence shows Adem or an accomplice used a real gun. See Raleigh, 157 Wn. App. at 734-35 (firearm need not be operable during commission of crime to constitute a firearm; language in Recuenco is dicta); State v. Padilla, 95 Wn. App. 531, 535, 978 P.2d 1113 (1999) ("a disassembled firearm that can be rendered operational with reasonable effort and within a reasonable time period is a firearm"), review denied, 139 Wn.2d 1003, 989 P.2d 1142 (1999); State v. Faust, 93 Wn. App. 373, 380, 967 P.2d 1284 (1998) (language in Pam on operability refers to the difference between a toy gun and a gun in fact; a gun incapable of being fired due to a mechanical defect is still a firearm).

But even if we assume proof of operability is required, we have previously held that operability may be inferred from evidence showing a threat to use a real gun. In State v. Mathe, 35 Wn. App. 572, 668 P.2d 599 (1983), affirmed, 102 Wn.2d 537, 688 P.2d 859 (1984), we held that the State proved the defendant "used a real and operable gun" because eyewitnesses described the guns and the defendant's express or implied threat to use them. Mathe, 35 Wn. App. at 581-82. Similarly, in State v. Bowman, 36 Wn. App. 798, 678 P.2d 1273 (1984), review denied, 101 Wn.2d 1015 (1984), we held

that eyewitness testimony describing a "real" gun and recounting a threat to use it was sufficient to establish "the existence of a real, operable gun in fact." Bowman, 36 Wn. App. at 803;[7] see also State v. Goforth, 33 Wn. App. 405, 410-12, 655 P.2d 714 (1982) (evidence was sufficient to support inference that "gun was operable in fact" where witnesses who were familiar with shotguns testified that the defendant used a real shotgun); McKee, 141 Wn. App. at 31 (evidence was sufficient to support firearm enhancement given victim's description of the weight and feel of the gun, the way in which defendant wielded it, and evidence that defendant had a real gun and access to other guns); Faust, 93 Wn. App. at 381 n.6 ("eyewitness testimony to a real gun that is neither discharged nor recovered is sufficient to support deadly weapons and/or firearms penalty enhancements").

Here, the victim testified that the gun "was pointed at me, and I know it was a gun. It was right in my face." Nick Crimp testified that he can tell the difference between a revolver and a semiautomatic handgun, that the gun dropped by the robbers was a semiautomatic, that it slid across the pavement right in front of him, and that it made a sound "like metal sliding across pavement." A detective who had used a semiautomatic pistol for 15 years testified that the firearm in the store video was a semiautomatic pistol. The detective based his conclusion on the gun's shape, and the fact that the suspect "racked" the slide and ejected a round from the chamber. Further, other evidence established that the police found a pistol holder in the van and a live round of ammunition designed for a semiautomatic pistol in a jewelry tray in the dumpster. Viewed in a light most favorable to the State, this evidence is sufficient to support an inference that Adem was armed with a real and operable gun.

---

[7] (Emphasis in original.)

In his reply brief, Adem also challenges the findings that he was "armed with a semiautomatic pistol," that he "dropped the handgun" by Crimp's feet, and that "Crimp was able to see and hear the handgun as it slid on the pavement."[8] Adem contends the evidence was insufficient to infer that the witnesses observed an actual handgun. For the reasons previously set forth, this argument fails.

In addition, Adem contends the written findings do not support the conclusion that he was guilty of unlawful possession of a firearm and the firearm enhancement. But Adem overlooks the oral findings that the court expressly incorporates by reference. The court's oral ruling, together with the written findings, support the court's conclusions of law. The written findings state, in pertinent part:

> a. On February 9, 2012, while Ms. Lang Huynh was working in her jewelry store in White Center neighborhood of Seattle, she was robbed by Liban Adem and three other individuals who entered her store wearing hoods and jackets. Several of the individuals were also wearing bandanas to hide their identities.
> b. The defendant was armed with a semiautomatic pistol. During the course of the robbery, the defendant held the handgun to Ms. Huynh's head in order to intimidate her into turning over $20,000 to $30,000 worth of jewelry.

The court's oral ruling states, in pertinent part:

> Eyewitness testimony to a real gun that is discharged and not recovered is sufficient to support a firearms enhancement under the law. Here, Ms. Hunyh testified that a gun was held to her head. She was confident that it was, in fact, a gun.
> The video of the robbery showed an article that was identified by Detective Magan as a semiautomatic pistol with the slide racked. If the slide were racked when a live round was in the chamber, that round would be ejected. A live round was identified as being found in one of the stolen jewelry trays that was found in the dumpster at the apartment complex, where the gray van was parked after the robbery.

---

[8] Adem contends the court erred in failing to enter findings of fact and conclusions of law as required by CrR 6.1(d). But after Adem filed his opening brief, the court filed findings and conclusions that it had signed at sentencing but failed to enter.

Finally, the witness, Nick Crimp, saw the gun dropped in the alley, and heard the sound of metal hitting pavement as the robbers fled the scene of the crime. These facts establish that the Defendant committed the crime while armed with the firearm.

The evidence supports the trial court's determination that Adem was armed with a firearm.

We affirm.

WE CONCUR: