# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51286-6-II |
| Respondent, | |
| v. | |
| TAMMY JO STEWART, | UNPUBLISHED OPINION |
| Appellant, | |

WORSWICK, J. — A jury returned verdicts finding Tammy Jo Stewart guilty of six counts of first degree unlawful possession of a firearm, five counts of possession of a stolen firearm, and one count of unlawful possession of a controlled substance.  Stewart appeals from her convictions and sentence, contending that (1) the trial court erred by failing to suppress evidence seized from her car, (2) the State failed to present sufficient evidence in support of two of her first degree unlawful possession of a firearm convictions and one of her possession of a stolen firearm convictions because it did not prove that the firearms were capable of firing, (3) the prosecutor committed misconduct during closing argument, (4) a jury instruction impermissibly commented on the evidence, and (5) the trial court erred at sentencing by imposing a firearm registration requirement.  Stewart also contends that (6) we should remand with instruction to strike certain legal financial obligations (LFOs) in light of recent statutory amendments.  We affirm Stewart's convictions but remand solely for the trial court to reconsider imposition of the felony firearm registration requirement after consideration of all RCW 9.41.330's enumerated factors.

FACTS

On June 23, 2017, Grays Harbor Sheriff's Deputy Paul Logan went to a house in Humptulips to contact Stewart and her son about warrants unrelated to this matter. Logan saw a live .22-caliber bullet on the ground outside of Stewart's car. While in the house, Logan saw four long barrel guns in Stewart's bedroom. One of the guns located in Stewart's bedroom was a 12-gauge shotgun, which was admitted at trial as exhibit 25. Logan was aware that Stewart was not permitted to possess firearms.

While waiting for another officer to arrive to assist him, Logan saw Stewart "sneaking along the back edge of the fence in the back yard." 1 Verbatim Report of Proceedings (VRP) (Aug. 31, 2017) at 147. Logan ordered Stewart to stop and detained her without incident.

Deputy Logan obtained a warrant to search Stewart's bedroom and vehicle. While executing the search warrant, Logan saw suspected methamphetamine and stolen property in Stewart's bedroom; he obtained an amended warrant to seize those additional items. Logan also saw three rifles in the trunk of Stewart's car. One of the rifles located in the trunk of Stewart's car was an SKS semiautomatic assault rifle, which was admitted at trial as exhibit 31.

The State charged Stewart with seven counts of first degree unlawful possession of a firearm, six counts of possession of a stolen firearm, and one count of unlawful possession of a controlled substance. Before trial, Stewart moved to suppress all evidence found in her vehicle, asserting that Deputy Logan lacked probable cause to believe that evidence of criminal activity would be located in the vehicle. The trial court denied Stewart's suppression motion, and the matter proceeded to trial.

At trial, Deputy Logan testified consistently with the facts above. Michael Hume testified that he or a family member owned all of the guns seized from Stewart's bedroom and

vehicle, which were previously stolen from his home. Regarding the shotgun admitted as exhibit 25, Hume testified:

> [I]t was my son's gun that he had up there and it was—it was something that he was working on and it's—one of the fishing reels, you take it apart and the spring goes, you can't find it, and then you don't get it back together. Well, that's what happened to this one. It can't be cocked, the trigger won't lock into position to fire and—it can be fixed if a gunsmith—take [sic] it to—any gunsmith can fix it, but right now it's not fireable.

2 VRP (Aug. 31, 2017) at 244. Regarding the SKS semiautomatic assault rifle admitted as exhibit 31, Hume testified:

> I hadn't even really fired it. It was a gift from my son. And the only thing I can tell you that might be a little different than this gun from most of the SKS's is most of them have a 20 to 30 shot clip. I have one at home, but I've adapted this to it. I haven't really fooled with it, because you have to take this whole section apart, take this whole assembly out. And then the wooden stock sometimes you have to carve along the side to do with it. And like I said, it's—it's a—something that my son got to me. It's sentimental value and I have never fired it, so. . . .

2 VRP (Aug. 31, 2017) at 229-30. The State then asked Hume if he had any reason to believe that the SKS rifle wouldn't fire, and Hume responded:

> No. It's right off—right off the showroom deal, right from there to my gun safe. I've never, you know, cocked it, that I can recall. I pulled the trigger. But I will say that I never put a gun away if I worked the action without closing it and taking the weight off the firing pin—spring off the firing pin. So—but to testify that I fired it, even a dry fire or what—I wouldn't be able to say that.

2 VRP (Aug. 31, 2017) at 232. Hume further testified that the gun admitted at trial as exhibit 28 had never fired.

After the State rested, Stewart moved to dismiss the charges related to the guns admitted as exhibits 25, 28, and 31, asserting that the State failed to present sufficient evidence that those guns were capable of firing. The State agreed that it failed to present sufficient evidence that the gun admitted as exhibit 28 was capable of firing and joined Stewart's motion to dismiss the first

3

degree unlawful possession of a firearm and possession of a stolen firearm charges related to that gun, which the trial court granted. The trial court denied Stewart's motion to dismiss the charges related to the guns admitted as exhibits 25 and 31.

During closing argument, the State discussed the statutory definition of a firearm, stating:

> A firearm is a weapon or device from which a projectile may be fired by an explosive, such as gunpowder, sounds pretty simple. It's a little more subtle than you might think at first, and I will tell you why.
> . . . .
> . . . [T]he law doesn't say can be fired, it says may be fired, and there is a good reason. What if I am some gang-banger with a felony on my record, who is not allowed to have a firearm. And I have got a Glock in my pocket, but I have taken out a part and put that part in my pocket, a spring, a firing pin, something that it doesn't work if it's out, but that I can just slip back in in a moment and make it work. When I walk around with that Glock 45 missing the firing pin in my waistband, and say, hey, it['s] not a firearm under state law, can't be arrested for it, can[']t take it. No, because may be fired, right? Because all I have to do is pop that firing pin, or that little spring, or whatever it is right back into that weapon and it's fully operational. It was written that way on purpose, because we don't want a little minor thing like that to create escape routes for criminals. Okay.

VRP (Sept. 1, 2017) at 27-28. Stewart did not object.

The trial court provided a jury instruction that listed each of Stewart's charges with reference to the specific gun related to the charge. For example, the jury instruction provided, "The Defendant has been charged in Count 1 with Unlawful Possession of a Firearm in the First Degree, to-wit: a 12 gauge shotgun, serial # 26134." Clerk's Papers (CP) at 56. Stewart and the State agreed to this instruction. The trial court also instructed the jury, "Keep in mind that a charge is only an accusation. The filing of a charge is not evidence that the charge is true. Your decisions as jurors must be made solely upon the evidence presented during these proceedings." CP at 55.

The jury returned verdicts finding Stewart guilty of six counts of first degree unlawful possession of a firearm, five counts of possession of a stolen firearm, and unlawful possession of

a controlled substance. At sentencing, the State requested the trial court to impose a felony firearm registration requirement. The trial court imposed the requirement, noting that its decision was based on Stewart's criminal history and present convictions for first degree unlawful possession of a firearm.

The judgment and sentence form contained a section for the trial court to check the boxes regarding its firearm registration decision. Specifically, the form allowed the trial court to check boxes to show that it had considered the following items: defendant's criminal history, whether the defendant had previously been found not guilty by reason of insanity, evidence of the defendant's propensity for violence, and "other" factors that contained a blank space for the trial court to fill in. CP at 11. The trial court checked only the boxes showing that it had considered "the Defendant's criminal history" and "other" after which the trial court wrote, "Convictions for Unlawful Possession of a Firearm." CP at 11.

Regarding LFOs, the trial court found that Stewart was indigent and did not have the present or likely future ability to pay discretionary LFOs. The court imposed a $200 criminal filing fee and $100 DNA (deoxyribonucleic acid) collection fee. While this appeal was pending, the trial court entered an agreed order striking the $200 criminal filing fee and $100 DNA collection fee. The agreed order also waived all interest accrued on nonrestitution LFOs. Stewart appeals from her convictions and sentence.

ANALYSIS

I. SUPPRESSION MOTION

Stewart first contends that the trial court erred by failing to suppress evidence seized from her car because Deputy Logan's affidavit in support of the search warrant failed to establish probable cause that evidence of a crime would be found in the car. We disagree.

5

We review de novo a trial court's legal conclusion of whether an affidavit supported probable cause to issue a search warrant. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). But our de novo review gives great deference to the issuing judge's assessment of probable cause and resolves any doubts in favor of the search warrant's validity. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). When reviewing whether probable cause supported the issuance of a search warrant, we consider only the information contained within the four corners of the supporting affidavit. *Neth*, 165 Wn.2d at 182.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, the issuance of a search warrant must be based on probable cause. "Probable cause requires more than suspicion or conjecture, but it does not require certainty." *Chenoweth*, 160 Wn.2d at 476. The affidavit in support of a search warrant application must "set forth sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place to be searched." *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The [issuing court] is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

There must be a "nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183. At issue here is whether Deputy Logan's affidavit contained sufficient facts to establish a nexus between evidence of Stewart's suspected criminal activity of unlawfully possessing firearms and her vehicle.

Here, Deputy Logan's affidavit stated in relevant part: (1) Stewart is a convicted felon prohibited from possessing firearms, (2) Logan saw four firearms in Stewart's bedroom, (3)

Logan saw an unfired .22-caliber bullet in the gravel near the driver's side of a car parked in front of Stewart's house, (4) two occupants of the house told Logan that the car belonged to Stewart. From these facts, an issuing judge could reasonably conclude it was probable that evidence of Stewart's suspected unlawful possession of firearms would be found in her car.

In asserting that the search warrant affidavit failed to establish the required nexus, Stewart relies on *State v. Thein*, 138 Wn.2d 133, 977 P.2d 582 (1999). *Thein* is clearly distinguishable. In *Thein*, our Supreme Court held that "generalized statements regarding the common habits of drug dealers," standing alone, are insufficient to establish a nexus between the evidence sought and the suspect's home. 138 Wn.2d at 149. Rather, there must exist "a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched." *Thein*, 138 Wn.2d at 147.

Here, unlike in *Thein*, the search warrant affidavit did not rely on generalized statements about the habits of suspected criminals to establish a nexus between evidence of unlawful possession of firearms and Stewart's car. Instead, the affidavit presented a factual basis from which to conclude it was probable that evidence of unlawful possession of firearms would be found in Stewart's car. The affidavit stated that an unfired bullet, indicia of firearm possession, was found just outside the driver's side of Stewart's car, which was parked in front of the house in which firearms were found in Stewart's bedroom. Because Deputy Logan's affidavit established probable cause to search Stewart's car, the trial court properly denied Stewart's motion to suppress evidence found in the car.

## II. SUFFICIENCY OF THE EVIDENCE

Next, Stewart contends that the State failed to present sufficient evidence supporting two of her first degree unlawful possession of firearm convictions and one of her possession of a

stolen firearm convictions. Specifically, Stewart contends that the State failed to present sufficient evidence that the guns admitted as exhibits 25 and 31 met the statutory definition of firearms because the evidence did not support a finding that the guns were capable of firing. We disagree.

Due process requires that the State prove beyond a reasonable doubt every element of a charged crime. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). Whether the State presented sufficient evidence to support a conviction is a question of constitutional law that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

Evidence is sufficient to support a conviction if any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the State. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014). And we view circumstantial evidence and direct evidence as equally reliable when reviewing the sufficiency of evidence in support of a conviction. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Former RCW 9.41.010(9) (2015) defines "firearm" in relevant part as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder."[1] To uphold Stewart's convictions for first degree unlawful possession of a firearm and for

---

[1] The jury was provided with an instruction stating this definition.

possession of a stolen firearm, the State must have presented sufficient evidence that the items she possessed were "firearms" under this statutory definition. *State v. Raleigh*, 157 Wn. App. 728, 734-37, 238 P.3d 1211 (2010).

This statutory definition, however, does not require the State to present evidence that an object alleged to be a firearm is operable. *Raleigh*, 157 Wn. App. at 734. Instead, the relevant inquiry is whether the object was a "'gun in fact'" or, was instead a "'toy gun'" or gun-like object incapable of being fired. *Raleigh*, 157 Wn. App. at 734 (quoting *State v. Faust*, 93 Wn. App. 373, 380, 967 P.2d 1284 (1998)). Evidence that a presently inoperable firearm can "be rendered operational with reasonable effort and within a reasonable time period" is sufficient to prove that it is a firearm under the statutory definition. *Raleigh*, 157 Wn. App. at 736.

A.      *Exhibit 25*

The State presented sufficient evidence from which the jury could find that the shotgun admitted as exhibit 25 was a firearm under the statutory definition. The shotgun was admitted at trial, and the jury could inspect it to determine that it was a gun in fact rather than a toy gun or gun-like object permanently incapable of firing. And although Hume testified that the shotgun was not presently operable because his son had been working on it and it was missing a part, he stated that "any gunsmith can fix it." 2 VRP (Aug. 31, 2017) at 244. From Hume's testimony and the jury's inspection of the shotgun, the jury could reasonably infer that the presently inoperable shotgun could "be rendered operational with reasonable effort and within a reasonable time period." *Raleigh*, 157 Wn. App. at 736. Accordingly, we hold that the State presented sufficient evidence to support Stewart's first degree unlawful possession of a firearm conviction as charged in count 1.

B.      *Exhibit 31*

The State also presented sufficient evidence from which the jury could find that the SKS semiautomatic rifle admitted as exhibit 31 was a firearm under the statutory definition. The rifle was admitted at trial and was available for the jury to inspect and determine that it was a gun in fact. And although Hume testified that he had never fired the rifle, he stated that he had no reason to believe that it couldn't fire because his son had purchased it for him "right off the showroom," after which he placed the rifle in his gun safe. 2 VRP (Aug. 31, 2017) at 232. Any reasonable jury can infer that a newly purchased rifle that has never been used and has been properly stored is a gun in fact and, thus, meets the statutory definition of a firearm. Accordingly, we hold that the State presented sufficient evidence to support Stewart's first degree unlawful possession of a firearm and possession of a stolen firearm convictions as charged in counts 7 and 13.

III.  PROSECUTORIAL MISCONDUCT

Next, Stewart contends that the prosecutor committed misconduct during his closing argument. We disagree.

To establish prosecutorial misconduct, a defendant bears the burden of proving the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If a defendant shows that the prosecutor's conduct was improper, we then determine whether the improper conduct resulted in prejudice. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Prejudice is established only if there is a substantial likelihood that the prosecutor's improper conduct affected the jury's verdict. *Emery*, 174 Wn.2d at 760.

Where, as here, a defendant fails to object to the alleged prosecutorial misconduct at trial, the defendant is deemed to have waived any error on appeal unless he or she shows that the

10

misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. Therefore, to meet this heightened standard, Stewart must additionally show that no curative instruction would have obviated any prejudicial effect on the jury. *Emery*, 174 Wn.2d at 760-61.

Prosecutors commit misconduct when they use arguments designed to arouse the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Arguments designed to arouse the jury's passions or prejudices create a danger that the jury may convict for reasons other than the evidence. *See State v. Ramos*, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011).

Stewart asserts that the prosecutor committed misconduct at closing when discussing the statutory definition of a firearm by stating that inoperable guns were included in the definition to prevent "escape routes for criminals" and "gang-banger[s]." VRP (Sept. 1, 2017) at 28. Stewart argues that the prosecutor's argument was improper because it inserted facts not in evidence and appealed to the jury's passions and prejudices.

The prosecutor's example of a "gang-banger" wielding a Glock .45 handgun to explain the legislature's intent in crafting a definition of a firearm is concerning because there appears to be no purpose for using this example other than to arouse an emotional response. Our case law has recognized the inherently prejudicial nature of gang evidence, and prosecutors should be cautious when inserting gang imagery in their closing arguments. *See, e.g.*, *State v. Mee*, 168 Wn. App. 144, 160-61, 275 P.3d 1192 (2012).

However, even assuming that the prosecutor's argument was improper, Stewart cannot demonstrate any resulting prejudice, let alone prejudice incurable by a jury instruction. The prosecutor's use of gang imagery in closing argument was restricted to discussing the statutory

definition of a firearm. And in using the analogy of a "gang-banger" in the place of a convicted felon to explain the rationale for including inoperable firearms within the definition of a firearm, the prosecutor did not suggest that Stewart herself was a member of a gang. Further, the prosecutor's argument did not suggest that the jury should convict Stewart for reasons outside the evidence presented at trial. Therefore, even assuming that the argument was improper, there is not a substantial likelihood that it affected the jury's verdict. Accordingly, Stewart's prosecutorial misconduct claim fails.

IV. COMMENT ON THE EVIDENCE

Next, Stewart contends that the trial court's jury instructions impermissibly commented on the evidence. Specifically, Stewart argues that the jury instructions removed a fact at issue from the jury's consideration (whether the objects Stewart was alleged to possess were firearms), by listing her charges with reference to a description of the firearm she was alleged to have possessed and by referring to the specific counts in the to-convict instructions. We disagree.

We review constitutional issues de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). Article IV, section 16 of the Washington Constitution[2] prohibits a trial court from conveying to the jury its personal attitude toward the merits of the case and from "instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). A jury instruction that does no more than accurately state the law pertaining to an issue

---

[2] Article IV, section 16 of the Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

does not constitute an impermissible comment on the evidence. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001).

In asserting that the trial court impermissibly commented on the evidence, Stewart relies on *Levy* and *Becker*. In *Levy*, our Supreme Court held that a to-convict instruction impermissibly commented on the evidence by specifying that a building was a building and that a crowbar was a deadly weapon.[3] 156 Wn.2d at 721-23. Similarly in *Becker*, our Supreme Court held that a special verdict form specifying that a school was a school impermissibly commented on the evidence.[4] 132 Wn.2d at 63-64. The jury instructions at issue here are distinguishable.

Here, the trial court's jury instruction number 2 merely listed all of Stewart's charges and incorporated a description of the make, model, and, in some instances, serial number of the

---

[3] The to-convict instruction at issue in *Levy* specifically provided in relevant part:

> To convict the defendant of the crime of burglary in the first degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 24th day of October, 2002, the defendant, or an accomplice, entered or remained unlawfully in a building, *to-wit: the building of Kenya White, located at 711 W. Casino Rd., Everett, WA;*
> . . . .
> (3) That in so entering or while in the dwelling or in immediate flight from the dwelling the defendant or an accomplice in the crime charged was armed with a deadly weapon, *to-wit: a .38 revolver or a crowbar*; and
> . . . .

156 Wn.2d at 716.

[4] The special verdict form at issue in *Becker* stated, "[Were] defendant[s], [Donald Becker and Nelson Gantt], within 1000 feet of the perimeter of school grounds, to-wit: Youth Employment Education Program School at the time of the commission of the crime?" 132 Wn.2d at 64 (alterations in original).

alleged firearm related to each charge. The jury instruction did not state that the descriptions of these objects constituted firearms and, thus, did not remove that factual issue from the jury's consideration. And the trial court's jury instruction number 1 informed the jury that the State's charges were only accusations and did not constitute evidence that the charges were true. Accordingly, we hold that the trial court's jury instructions did not impermissibly comment on the evidence.

## V. FELONY FIREARM REGISTRATION

Next, Stewart contends that the trial court abused its discretion when requiring her to register as a felony firearm offender under RCW 9.41.333 because the record shows that the trial court failed to consider all the enumerated factors for imposing the requirement under RCW 9.41.330. We agree.

A trial court has discretion to require a defendant convicted of a felony firearm offense to register as a felony firearm offender. RCW 9.41.330(1). We review a trial court's discretionary decision for an abuse of discretion. *State v. Miller*, 159 Wn. App. 911, 918, 247 P.3d 457 (2011). A trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Miller*, 159 Wn. App. at 918 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Under RCW 9.41.330, the court "must consider whether to impose" the registration requirement and, in doing so, "*shall* consider all relevant factors including, but not limited to" the defendant's criminal history, whether the defendant has previously been found guilty by reason of insanity, and the defendant's propensity for violence. (Emphasis added.) RCW 9.41.330 does not require the trial court to articulate its consideration of each factor on the record when determining whether to impose a registration requirement.

14

Here, the trial court required Stewart to register as a felony firearm offender. Although we acknowledge that the trial court is not required to articulate its consideration of all statutory factors, the trial court is required to consider them. Based on the trial court's comments on the record and the unusually written judgment and sentence form, it is clear that the trial court considered *only* Stewart's criminal history and her present convictions for first degree unlawful possession of a firearm. The record here affirmatively demonstrates that the court failed to consider all the required factors.

Because RCW 9.41.330 mandates that a trial court consider all of the enumerated factors before imposing a registration requirement, the trial court abused its discretion by failing to do so here. Accordingly, we remand solely for the trial court to reconsider whether to impose a felony firearm registration requirement after considering all required factors under the statute.

## VI. LFOs

Finally, Stewart contends that we should remand with instruction to strike the imposed criminal filing fee and DNA collection fee in light of recent legislative amendments to the LFO statutes. However, while this appeal was pending, the sentencing court entered an agreed order providing Stewart with this requested relief. Accordingly, this issue is now moot, and we do not further address it. *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995) (an issue is moot if this court can no longer provide effective relief).

We affirm Stewart's convictions. But we remand for the trial court to reconsider whether to impose a felony firearm registration requirement.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Worswick, P.J._

We concur:

_Glasgow, J._

_Cruser, J._